### In re PEOPLES LOAN & INVESTMENT COMPANY, Debtor.

### No. FS-68-B-15.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Aug. 14, 1970.

See also 8 Cir., 410 F.2d 851.

James Gallman, Fayetteville, Ark., for Larry McCord, trustee.

Bradley Jesson, Fort Smith, Ark., for creditors committee.

Jack Yates, Ozark, Ark., for debenture holders.

## MEMORANDUM OPINION

PAUL X. WILLIAMS, District Judge.

On April 23, 1970, after due notice to all interested parties and to their attorneys, this cause came on for hearing as to the Trustee's petition to make payments to the debenture holders of Peoples Loan & Investment Company.

The issue before the Court for determination is whether the stockholders of Peoples Loan & Investment Company who traded their stock to the company for debentures between February 1967 and January 1968, are entitled to be treated on the same basis as depositors of the corporation. Between these dates Peoples Loan & Investment Company "purchased" some $37,261.00 worth of stock from its own stockholders. As soon as the stock was exchanged for the debentures they were carried on the books of the company as "treasury stock."

At the hearing on April 23, 1970, the Trustee, Larry R. McCord, testified that the minutes of the meeting of the Directors of the corporation held on March 17, 1965, reflect the first authorization of the exchange of debentures for treasury stock. They specifically included a statement by Sam Sexton, Jr., chief executive officer of the company, at that time, that the rights of the debenture holders would be subordinated to those of the depositors. An excerpt from the minutes of that Directors meeting to this effect was introduced as an exhibit in evidence.

Sam Ludington, a Certified Public Accountant, testified that his contact with Peoples Loan & Investment Company began in 1967 when he was employed to assist in an audit. According to the testimony of Mr. Ludington, the stock debentures were carried by the debtor in a completely separate account from those of its general obligations to creditors, including its host of depositors. He also testified that at no time after January 1, 1966 did the assets of Peoples Loan & Investment Company equal one and one-fourth times its liabilities.

He testified to the hopeless insolvency of Peoples Loan & Investment Company as of the date of the hearing and stated this situation had existed continuously since May 1968, when the company filed its petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act.

An exhibit to his testimony was a list of the debenture holders, the amount of each debenture certificate and the date of issuance of each debenture. All were issued during the year 1967 and in January of 1968. He stated that at the time each debenture was issued there was not a sufficient reserve to comply with the requirements of Arkansas law concerning acquisition of its own stock by a corporation; and that in his opinion the company was insolvent at all such times, even though the published statement issued by the Management showed it to be a solvent concern.

Several of the debenture holders, including Mr. Paul Dunn, testified, and it was stipulated that his testimony was typical of what the testimony of other debenture holders would be if called to the witness stand.

It was also stipulated that none of the debenture holders were officers in Peoples Loan & Investment Company and that none participated in its management.

The testimony reflects that some of the stockholders became dissatisfied in 1967 when they received no dividends from the corporation, and they talked to the executive officers about the sale of their stock. The officers discouraged cash sales and encouraged exchange of stock for debentures. The record does reflect that some stockholders were paid cash for their shares of stock. It seems the Management of Peoples Loan & Investment Company arbitrarily fixed a value for the stock, since the only market was created by repurchasing the stock from its own stockholders. The shares of stock repurchased for cash brought $5.50 or $6.00 per share, while the debenture holders exchanged their stock for $7.00 per share.

Mr. Dunn testified that after talking with the Vice-President of Peoples Loan & Investment Company he agreed to exchange his stock for debentures at a guaranteed 6% interest, payable in five years. He stated that he was led to believe the debentures would be treated as long term deposits.

It is the contention of the debenture holders that their actions were in good faith; that they were not aware of the insolvent financial condition of Peoples Loan & Investment Company; that Management represented to them that their debentures would be treated the same as savings deposits, and that they should not be penalized because the executives of the corporation did not make full disclosure of the financial condition of the company to them.

On the other hand, the Creditors' Committee pointed out that it was the individual decision of each debenture holder to initially purchase stock rather than deposit their funds in a savings account. That if the stock had increased substantially in value the stock investors would have reaped considerably more profit than the interest paid to the depositors. That this was a risk which they assumed. Further, that since the corporation is now insolvent and was at the time of acquiring the stock, to place the debenture holders in the same category as the depositors would in effect penalize the depositors, and that such action would be both unjust and *illegal*.

This issue is discussed in an annotation, (Corporation—Acquisition of Own Stock, Sec. 9) 47 A.L.R.2d P. 774. The general rule is stated as follows:

"The transaction must be completed while the corporation remains solvent. The rule is general that even if the corporation was solvent when the transaction was entered into, if the transaction is still executory when the company becomes insolvent it cannot be enforced as against the rights of creditors then existing. This rule applies in two situations, (1) where the stockholder seeks to enforce a contract by the corporation to purchase his stock, and (2) *where the corporation has purchased and received the stock and the stockholder later seeks to enforce an obligation given him by the company for the price.*" (Emphasis added.)

At page 776 of the same annotation, it is stated:

"If a stockholder transfers his stock to the corporation in return for its obligation to pay him for it later, the same principle that would prevent him, when the corporation has become insolvent, from enforcing its executory contract to buy back the stock from him, prevents him from enforcing its obligation to pay the price. * * *

"Notwithstanding findings of fact by the Referee in Bankruptcy that the purchase of stock was made in good faith, that it was made while the corporation was solvent, and that the purchase did not make the corporation insolvent, notes given by the corporation for the price at which it bought the stock are subordinated to the claims of general creditors. Matthews

Brothers v. Pullen, 1920, C.A. 1st Mass.) 268 F. 827."

See also, In re Belmetals Mfg. Co., 299 F.Supp. 1290 (N.D.Cal.1969.)

The general rule is supported by the case of McConnell v. Estate of Butler et al., 402 F.2d 362 (9th Cir. 1968). In this case the Circuit Court of Appeals reversed the District Court and held that the claim of the debenture holders must be subordinate to the claims of other general creditors since the corporation was insolvent at the time payment was to be made through the Bankruptcy Court.

In reaching its decision on Page 366 of the opinion the Court said:

" * * * in the case of Robinson v. Wangemann, 75 F.2d 756 (5 Cir. 1935). The court stated: "A transaction by which a corporation acquires its own stock from a stockholder for a sum of money is not really a sale. The corporation does not acquire anything of value equivalent to the depletion of its assets, if the stock is held in the treasury, as in this case. It is simply a method of distributing a proportion of the assets to the stockholder. The assets of a corporation are the common pledge of its creditors, and stockholders are not entitled to receive any part of them unless creditors are paid in full. When such a transaction is had, regardless of the good faith of the parties, it is essential to its validity that there be sufficient surplus to retire the stock, without prejudice to creditors, *at the time payment is made out of assets.* In principle, the contract between [the stockholder] and the corporation was executory until the stock should be paid for in cash. It is immaterial that the corporation was solvent and had sufficient surplus to make payment when the agreement was entered into. It is necessary to a recovery that the corporation should be solvent and have sufficient surplus to prevent injury to creditors *when the payment is actually made.*" (75 F.2d at 757–758, emphasis added)."

The Court also commented in the *McConnell* case that: "the mere exchange of stock for debentures would not constitute payment at the time the agreement was made since debentures are actual evidence of a corporate debt."

From the above citations it is clear that when a corporation purchases its own stock as treasury stock and gives notes or debentures as consideration, then it must remain solvent at the time the notes or debentures are sought to be enforced. The fact that the shareholders and for that matter the corporation acted in good faith at the time the transaction was entered into does not change the rule. Such obligations can not be enforced against an insolvent corporation to the detriment of its general creditors.

Ark.Stats.Ann.Sec. 64–105 provides in part as follows:

"64–105. Right of corporation to acquire and dispose of its own shares.

"A. A corporation shall not purchase directly or indirectly any of its own shares unless such purchase is authorized by this section and not prohibited by its articles of incorporation.

"B. A corporation may not purchase its own shares—

"1. if there is reasonable ground for believing that the corporation is, or as a result of such purchase would be, unable to meet its obligations as they become due in the ordinary course of business or that the present fair value of the remaining assets of the corporation would be less than one and one-fourth (1¼) times the amount of its liabilities to creditors; * * *."

Sam Ludington testified that at no time from January 1, 1966 forward to the time of bankruptcy, did the assets of Peoples Loan & Investment Company meet the statutory requirements which would authorize it to purchase its own stock. Consequently, the holders herein who traded their stock for debentures are not entitled to benefits from the ille-

gal and unauthorized purchase of their stock, even though it is undisputed they acted in good faith.

At the hearing on this matter excerpts from the minutes of the Board of Directors meeting of Peoples Loan & Investment Company held on March 17, 1965 were introduced. The pertinent part of the minutes are as follows:

"Mr. Sexton submitted another proposal in regard to giving the holders of Class C. Common Stock an opportunity to exchange their stock for subordinate debentures, yielding 6–½%. He proposed that these debentures would be subordinated to everyone's right, with the exception of the stockholders, and that they would be issued for a fifteen year period, callable at par at the end of the fifth year, have a $7.00 value if not called until the tenth year, and have a value of $7.50 if held until maturity. They would be exchanged now at the rate of $6.50. He said he felt that some shareholders would rather have this guarantee, than to take the risk that goes with common stock. Upon motion made by B. A. McConnell, and seconded by Harley Williams, it was unanimously

"RESOLVED, that this proposal, as outlined, be submitted to the shareholders for their vote."

As was reflected from the testimony, a meeting of the shareholders was held on March 18, 1965, and the proposal for the exchange of the stock for the debentures was adopted.

It is clear from the minutes of the Directors meeting that it was the intention of the Directors that the debentures to be issued in exchange for stock "would be subordinated to everyone's right, with the exception of the stockholders. * * * " This means that the holders of the debentures would be entitled to share in the proceeds of the company before the owners of the common stock, but behind all of the other creditors, including the depositors.

For the foregoing reasons, we hold that the debentures issued in exchange for the common stock should be subordinated to the rights of the general creditors, including the depositors. An appropriate judgment will be entered to this effect.