**Philip I. PALMER, Jr., as Trustee in Bankruptcy of Maxwell Electronics Corporation, d/b/a KMEC–TV, Bankrupt,**

**v.**

**James A. JUSTICE, Glenn W. Justice and Robert Bruce Lane, Independent Executor of the Estate of R. L. Lane, Deceased.**

**Civ. A. No. 3–3381–C.**

United States District Court,
N. D. Texas,
Fort Worth Division.

Feb. 24, 1971.

Ungerman, Hill, Ungerman & Angrist by A. L. Vickers and Vernon O. Teofan, Dallas, Tex., for plaintiff.

Spafford, Freedman, Hamlin, Gay & Whitham, Dallas, Tex., for defendants.

James A. Justice and Glenn W. Justice, Haynes & Boone by Joe B. Abbey, Dallas, Tex., for Independent Executor of Est. of R. L. Lane, deceased.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This is an action by a trustee in bankruptcy under § 70e of the Bankruptcy Act (11 U.S.C. § 110(e)) to recover property of the bankrupt estate transferred to the defendants. The undisputed facts are as follows. On December 20, 1963, the Maxwell Electronics Corporation (the bankrupt) agreed to repurchase 8,500 of its capital shares from the defendants, James A. Justice, Glenn W. Justice, and R. L. Lane. On that day the corporation issued the defendants a non-interest bearing, unsecured promissory note in the amount of $24,000.00 as consideration for their shares. Payment was due in thirty-six months. On or about December 21, 1966, the $24,000.00 was paid to the defendants pursuant to the terms of the note. On May 16, 1969, an involuntary petition in bankruptcy was filed against Maxwell Electronics and that corporation was adjudged bankrupt on June 3, 1969.

It is also uncontested that on December 20, 1963 Maxwell Electronics Corporation had in excess of $127,000.00 in its earned surplus account and in excess of $115,000.00 in its capital surplus account. On December 21, 1966, the corporation did not have in its capital surplus and earned surplus accounts an amount sufficient to cover the $24,000.00 payment to the defendants. The applicable Texas law [1] states in part:

> "A corporation may purchase its own shares to the extent of the aggregate of any unrestricted surplus available therefor and its stated capital * * *."

At the time, the corporation had no earned surplus and the $24,000.00 was paid out of the general operating funds. Therefore, according to the trustee, "the

---

[1]. Tex.Bus.Corp.Act.Ann. art. 2.03B, V.A.T.S. (1956).

894

transaction was 'in law' a fraudulent transfer under the provisions of Section 70e (11 U.S.C. § 110e) of the Bankruptcy Act.

The dates controlling this transaction is the primary ground upon which the parties have chosen to do battle. The plaintiff submits that according to Robinson v. Wangemann, 75 F.2d 756 (5th Cir. 1935) and the cases following it the corporation must have the requisite amount of unrestricted surplus both on the date that the transaction was entered into and on the date any payment was made. Defendants argue primarily from a law review article, Herwitz, Installment Repurchase of Stock: Surplus Limitations, 79 Harv.L.Rev. 303 (1965) advocating that the date to which the statutory surplus restriction applies is the transaction date as opposed to the payment date.

█ In the *Robinson* case, the corporation repurchased 500 shares of its own stock from the defendant Wangemann, who was its president and a large stockholder. At the time the corporation tendered its note as consideration, its cash surplus was sufficient to cover the note. The note due in one year, on January 1, 1923, was never paid. From time to time renewal notes were issued until the company was adjudicated bankrupt. The representative of Wangemann's estate then filed a claim against the bankrupt's estate for the interest and principal of the notes. The trial court affirmed an order of the referee allowing the claim but the appellate court reversed, saying:

It may be conceded that if Arthur Wangemann had received cash for his stock at the time he relinquished it the transaction would have been valid, but that is not the case here presented.

\* \* \* \* \* \*

It is immaterial that the corporation was solvent and had sufficient surplus

to make payment when the agreement was entered into. It is necessary to a recovery that the corporation should be solvent and have sufficient surplus to prevent injury to creditors when the payment is actually made. This was an implied condition in the original note and the renewals accepted by Arthur Wangemann. 75 F.2d at 757–758.

The *Robinson* case has been recently followed.[2] While *Robinson* and its progeny may still be good law, they are inapposite here. In the case at bar payment for the stock was made approximately two and one-half years prior to the date that the petition in bankruptcy was filed. In *Robinson* et al. the notes or debentures were not yet paid and all funds were still in the estate. The Court finds this distinction to be highly significant. In the *Robinson* line of cases the courts were primarily deciding in what class of creditor the note holder would be placed. A person or corporation is permitted to make preferential transfers and the trustee cannot set them aside unless they occur within four months of bankruptcy, are fraudulent, or voidable for any other reason under state or federal law.

In so far as the controlling date is concerned, the Court finds convincing one of the defendant's arguments from the Herwitz article, *supra* p. 322. The State of Texas adopted the Model Business Corporation Act in 1955.[3] Article 2.03 of that statute sets out the circumstances under which a corporation may "purchase" its own shares. As stated earlier, it may only do so where there is sufficient unrestricted surplus available. In support of their position that the word "purchase" refers to the time when the agreement is entered into and not when payment is made, defendants point to the fact that in 1957 that portion of the Model Act was revised in or-

2. Cf. McConnell v. Estate of Butler, 402 F.2d 362 (9th Cir. 1968); In re Peoples Loan and Investment Co., 316 F.Supp. 13 (W.D.Ark.1970); In re Belmetals

Mfg. Co., 299 F.Supp. 1290 (N.D.Cal. 1969).

3. Tex.Laws 1955, ch. 64 at 239.

der to clarify the term "purchase". The revision states:

> A corporation shall have the right to purchase, take, receive, or otherwise acquire, hold, own, pledge, transfer or otherwise dispose of its own shares, but purchases of its own shares, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted earned surplus available therefor, and, if the articles of incorporation so permit or with the affirmative vote of the holders of at least two-thirds of all shares entitled to vote thereon, to the extent of unreserved and unrestricted capital surplus available therefor.

> No *purchase of or payment for its own shares* shall be made at a time when the corporation is insolvent or when such purchase or payment would make it insolvent. Model Business Corporation Act § 5. (Court's emphasis.)

Although this reasoning is persuasive, the Court need not gloss the word "purchase" in this manner to decide the case. In order to recover under § 70e, the trustee has alleged that the transfer was fraudulent as a matter of state law. He does not argue that the transfer was fraudulent under the general fraudulent conveyance statutes [4] but because it was in violation of Article 2.03 in that Maxwell did not have sufficient unrestricted surplus when the payment was made.[5] Even assuming arguendo that this violation existed, the Court does not find that the defendants are liable.

Article 2.03 does not set out the liability for such transfers. The Court must ascertain whether there is shareholder liability either under the Texas Business Corporation Act or under Texas case law. The liability of directors and shareholders is delineated in Article 2.41. In the event of insolvency, an assenting director is liable for payments out of the reduction of surplus for the purchase price of shares issued by the corporation and later purchased by it to the extent of the payments made for the purpose of discharging creditor claims. The director is entitled to contribution from the shareholders up to the amount of the payments received by them. Tex.Bus. Corp.Act.Ann. art. 2.41A(6) (1956). Maxwell Electronics was not shown to be insolvent either prior to or immediately after its payment to the defendants. Consequently, the defendants are not liable under Article 2.41A(6).

Absent insolvency, the statute holds only the directors liable under Article 2.41A(2).[6] However, an argument may be made for shareholder liability under Article 2.41E [7] if the phrase "or other distribution of assets of a corporation" is construed to include a payment for the repurchase of its own stock. Tex.Rev.Civ.Stat.Ann. art. 2.03, comment (1956). Even under this construction, the shareholder would only be liable if he knew the dividend or distribution was illegal. 14 Tex.Jur.2d Corporations § 273 (1960). The knowledge requirement here is similar to that in In re Belmetals Mfg. Co., *supra* Note 2,

---

4. Tex.Bus. & Commerce Code §§ 24.01–24.05, V.A.T.S. (1968).

5. Article 2.03 seemingly embodies the principle upon which corporate creditors, prior to the Texas Business Corporation Act, could set aside a transfer of corporate assets as a fraudulent conveyance. Annual Survey of Texas Law-Corporations, 23 Sw.L.J. 98, 99 (1968).

6. (2) Directors of a corporation who vote for or assent to the purchase of its own shares contrary to the provisions of this Act shall be jointly and severally liable to the corporation for the amount of consideration paid for such shares which is

in excess of the maximum amount which could have been paid therefor without violating the provisions of this Act.

7. E. A director against whom a claim shall be asserted under this Article for the payment of a dividend or other distribution of assets of a corporation, and who shall be held liable thereon, shall be entitled to contribution from the shareholders who accepted or received such dividend or assets knowing such dividend or distribution to have been made in violation of this Article, in proportion to the amounts received by them, respectively.

where the trustee was allowed to recover the partial payments already made to the selling shareholders. The Court there found that the purchasers had notice of the impropriety. No such showing has been made here. Therefore, the defendants are not liable under Article 2.41E.

Not finding the defendants statutorily liable, the Court must now determine whether they can be held liable under Texas case law. Although there are no cases dealing with shareholder liability for an illegal repurchase of stock, the courts have dealt with the problem of an illegal dividend and the stockholders' liability therefor. It seems appropriate, under the circumstances here, to apply the case law on the liability for an illegal dividend to the liability for an illegal stock repurchase.[8]

In one of the few Texas cases[9] dealing with shareholder liability for illegal dividends, the Court has held that two things had to be proved. The corporation had to be insolvent and cease doing business. This Court agrees with one commentator who says that these two requirements would still pertain, the matter not having been specifically covered by the Texas Business Corporation Act. Lebowitz, Duties and Liabilities of Directors, in Texas Business Corporation Act Proceedings, 3A Tex.Rev.Civ.Stat.Ann. 500, 521 (1956).

The requirements of the *Temple Lumber Co.* case are also present in trust fund doctrine which still lingers in the Texas law. This theory makes the capital assets of a corporation a trust fund for the benefit of creditors when there is insolvency plus a quitting of business. Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S.W. 16 (1893); Wortham v. Lachman-Rose Co., 440 S.W.2d 351, 353 (Tex.Civ.App.— Houston (1st Dist.) 1969, no writ). Under this theory, a shareholder could re-

tain dividends even though the disbursement of them rendered the corporation insolvent because the assets of the corporation do not become a trust fund until the insolvent company ceases to do business. Comment, Shareholder's Liability for Dividends Improperly Declared and Paid, 1 Sw.L.J. 220, 235 (1947). While this theory has been sharply criticized in the past,[10] it is not the function of this Court to redirect or change the law of the State of Texas.

Accordingly, for the above stated reasons, the plaintiff is entitled to take nothing and the cause is hereby dismissed.

---

8. The statute on liability seems to treat them jointly. Tex.Rev.Civ.Stat.Ann. arts. 2.41A(6) and 2.41E. Commentators have also seen fit to discuss the two aspects together. Israels, Corporate Share Repurchase, 22 Sw.L.J. 755, 757 (1968).

9. Temple Lumber Co. v. Pineland Naval Stores Co., 25 S.W.2d 675 (Tex.Civ.App. —Beaumont 1930, no writ.)

10. Hildebrand, Texas Corporations § 491 (1942).