Clarence E. BAXTER, Plaintiff,

v.

LANCER INDUSTRIES, INC., Defendant.

No. 62C655.

United States District Court
E. D. New York.

Jan. 11, 1963.

Grossman & Grossman, New York City, for plaintiff; Louis Grossman, Herman Cahn, New York City, of counsel.

Levy & Nevins, New York City, for defendant; Saul S. Nevins, New York City, of counsel.

ZAVATT, Chief Judge.

This is a motion by the plaintiff for summary judgment in an action to enforce a written agreement between the parties entered into on August 29, 1961 and providing as follows:

"Lancer Industries Inc.
"22 Jericho Turnpike,
"Mineola, N. Y.
"Executive Offices Pioneer 7–8255

"August 29, 1961

"Dr. Clarence E. Baxter
"Maple and East Street
"Coudersport, Pennsylvania
"Dear Dr. Baxter:

"In accordance with our understanding we have agreed to sell and you have agreed to purchase, 16,500 shares of the Common Stock of Lancer Industries, Inc. at $3.50 per share. We have advised you that we have a Registration Statement currently pending before the Securities and Exchange Commission and that we will amend said statement to include the 16,500 shares purchased hereunder and, in addition, the 3,000 shares previously purchased from Mr. George Langley.

"It is the consensus of opinion of corporate counsel that this Registration Statement will become effective within ninety days of this date, thereby making the stock registered and free trading.

"In the event that this Registration Statement is not effective within the time set forth above, we guarantee, at your request, to repurchase the above mentioned shares of stock from you at your cost. You acknowledge that the shares purchased by you are unregistered shares and simultaneously with the purchase thereof, you have agreed to execute the enclosed investment letter.

"Yours very truly,
"LANCER INDUSTRIES, INC.
"s/ Benjamin Tessler,
President.
"ACCEPTED:
"s/ Clarence E. Baxter
"Clarence E. Baxter"

On November 17, 1961 plaintiff received the following letter from defendant's President:

"Lancer Industries Inc.
"22 Jericho Turnpike,
"Mineola, N. Y.
"Executive Offices PIoneer 7–8255

"November 17, 1961

"Mr. Clarence E. Baxter
"Maple & Goett St.
"Coudersport, Penna.

"Dear Mr. Baxter:

"Please be advised that although the Registration Statement covering the shares of stock listed in your name had become effective, the Securities and Exchange Commission has requested the company to file a Post-effective Amendment. This Amendment will be filed in the immediate future and you are advised via this letter that none of the shares of stock owned by you may be transferred across the books and records of the company. Notice of the blocking of the transfer of such shares has been forwarded to our Transfer Agent.

"You will be advised immediately when the Post-effective Amendment becomes effective, at which time you may dispose of your shares of stock as you see fit.

"Sincerely yours,
"s/ Peter A. Cattano, Sr.
"Peter A. Cattano, Sr.
"President"

The plaintiff alleges that as of November 20, 1962 the defendant had failed to register the 19,500 shares of Lancer stock mentioned in the agreement. A formal demand for compliance with the agreement was made by plaintiff on June 1, 1962 and this suit was commenced on June 14, 1962. In regard to the registration of the shares in question the SEC has expressed itself as follows:

"November 20, 1962

"Grossman & Grossman
"545 Fifth Avenue
"New York 17, New York
"Re: Strato Industries, Inc. (formerly
"Lancer Industries, Inc.
"File No. 2–18028

"Gentlemen:

"This will refer to your letter of November 15, 1962 with respect to the Corporation's registration statement referred to above.

"Supplementing our letter of June 20, 1962, we wish to advise that the registration statement as amended on September 15, 1961 and March 21, 1962 covers 19,500 shares to be offered by Dr. Clarence E. Baxter as a selling stockholder. The registration statement as thus amended does not meet the requirements of the Securities Act of 1933 and this Commission was advised by letter from Myron E. Barg, counsel in this matter, that the Corporation will not offer or sell, or permit the selling stockholders to offer or sell any of the common stock covered by the registration statement until such time as it has been amended to meet the requirements of the Securities Act of 1933.

"Since the registration statement, as of this date, does not meet such requirements, any public offering of the shares covered thereby prior to the filing of an appropriate amendment to the registration statement would constitute a violation of the Act.

"Very truly yours,
"Joseph Bernstein
"Assistant Director
"Division of Corporation Finance
"By _____
"G. K. Scully,
Branch Chief"

█ █ In opposition to the motion the defendant asserts that there are present substantial questions of fact which pre-

clude the granting of summary judgment and, further, that as a matter of law the plaintiff cannot enforce the agreement at this time. As to the presence of questions of fact defendant contends: (1) that the 3,000 shares purchased by plaintiff from George Langley are not now in plaintiff's possession, having been pledged in some sort of loan transaction, and that plaintiff is unable to return them to the corporation; (2) that 6,500 of the shares purchased by plaintiff from Lancer have been hypothecated with various banks and are not now. in plaintiff's possession and that plaintiff is unable to secure their return; (3) that the repurchase agreement does not cover the 3,000 shares purchased by plaintiff from George Langley. It would thus appear that, as to the 9,500 shares above referred to, substantial questions of fact are presented which preclude the granting of summary judgment. While the plaintiff would have the court now decide that the 3,000 shares purchased from Langley were in fact covered by the repurchase agreement this question appears to devolve on the intention of the parties. The question of the intentions of the parties to a contract may not properly be resolved on a motion for summary judgment. Empire Electronics Inc. v. United States, 311 F.2d 175 (2d Cir., 1962). Defendant further contends that, as to all of the 19,500 shares involved, it cannot at this time fulfill its obligation to repurchase since it is precluded from doing so by the governing Florida Law, Fla.Stat.Ann. § 608.13(9) (b), Lancer being a Florida corporation. Section 608.13(9) (b) provides that every corporation unless otherwise provided by law or by its certificate of incorporation, shall have power to:

> "Purchase, hold, sell and transfer shares of its own capital stock, provided that no corporation shall purchase any of its own capital stock except from the surplus of its assets over its liabilities including capital.
> * * * * "

Defendant has annexed to its affidavits a financial statement dated February 28, 1962, from which it appears that the defendant has no earned surplus as defined by statute available for repurchase of stock, although assets do exceed liabilities. The affidavit of Lancer's treasurer states that as of November 9, 1962 defendant's liabilities exceed its assets. Plaintiff strongly contests the validity and accuracy of both the financial statements and the treasurer's assertion and asserts that in fact there is sufficient surplus from which the corporation may repurchase its own stock. This, of course, presents a question of fact which the court cannot resolve on a motion for summary judgment.

The existence or non-existence of adequate surplus is not to be determined solely upon the defendant's financial statements. Were the issue to be so limited, a trial would be a sterile playlet. What little authority there is suggests that actual values, albeit conservatively applied, rather than book values, are determinative of the existence of surplus. Mountain State Steel Foundries v. C. I. R., 284 F.2d 737 (4th Cir. 1960); Goldberg v. Peltier, 75 R.I. 314, 66 A.2d 107 (1949); Bolmer Bros. Inc. v. Bolmer Constr. Co. Inc., 114 N.Y.S.2d 530 (Sup. Ct.1952); Hauben v. Morris, 161 Misc. 174, 291 N.Y.S. 96 (1936). This approach would appear to be preferable as a safeguard against possible manipulation of balance sheet items to show no surplus. In this regard one authority has pointed out that certain balance sheet items, such as valuation and reserves, are fixed by the directors of the corporation. 1 Hornstein, Corporation Law and Practice § 195 (1959).

The only question remaining for consideration is whether, as plaintiff contends, in the absence of any excess of assets over its liabilities including capital, a Florida corporation may repurchase its own stock, sold by it to a shareholder with a promise to repurchase if the shares were not registered with the SEC within 90 days from the date of the agreement. The Florida courts have not yet considered the precise question. However, a majority of jurisdictions by

statute restrict the power of corporations to purchase their own shares unless certain financial conditions are met. See Note, 59 Yale L.J. 1177, 1182–83 (1950); Oleck, Modern Corporation Law § 616. (1959). In determining the action that would be taken by the Florida courts, if presented with the precise question at issue, the court will look to the law of such other jurisdictions, considering the problem from the standpoint of the enforceability of such agreements if the particular statutory prerequisites have not been met. The purpose of this type of statute is the protection of the corporate creditors and the other shareholders. Corporate power to purchase its own stock has been frequently abused. When done by faltering corporations it was oft intended to create preferences to the detriment of creditors and the remaining shareholders. Such statutes seek to preserve the margin of safety supplied by the real value of contributed capital. Mountain State Steel Foundries v. C. I. R., supra. The withdrawal of assets by a shareholder on sale of his shares to the corporation has the same effect upon creditors as the payment of a dividend and should thus be allowed only when the corporation could properly declare a dividend. See Mindenberg v. Carmel Film Productions, 132 Cal.App.2d 598, 282 P. 2d 1024 (1955). See Fla.Ann.Stat. § 608.54.

■■ Promises to repurchase, such as that involved in the instant case, must be viewed as conditioned by the requirement that, at the time the corporation is called on to perform, it must have sufficient funds so that disbursement for the repurchase will not involve the use of funds not authorized to be so used by the applicable state law. Thus it has been said that the statute is, in effect, read into the agreement. Mountain State Steel Foundries v. C. I. R., supra. Although the repurchase agreement may be valid when made it is generally held that enforcement must be refused if the corporation's financial position is such that, at the time the corporation is called on such disbursements may be lawfully to perform, it lacks funds from which

made. 1 Hornstein, Corporation Law and Practice § 496 (1959); 1 Oleck Modern Corporation Law § 35 (1959); Jarroll Coal Co. v. Lewis, 210 F.2d 578 (4th Cir. 1954); In re Mathews Constr. Co., 120 F.Supp. 818 (S.D.Cal.1954); In re Semolina Macaroni Co., 109 F.Supp. 453 (D.R.I.1952); In re Bell Tone Records, Inc., 86 F.Supp. 806 (D.N.J.1949); Cooper v. Brook, 197 Misc. 575, 95 N.Y.S.2d 23 (1950); Engelken v. Shanty Shops, 104 N.Y.S.2d 970 (Sup.Ct.1951); Mindenberg v. Carmel Film Productions, supra; Precision Extrusions Inc. v. Stewart, 36 Ill.App.2d 30, 183 N.E.2d 547 (1962); Jackson v. Colagrossi, 50 Wash. 2d 572, 313 P.2d 697 (1957); Greater N. Y. Carpet House v. Herschmann, 258 App. Div. 649, 17 N.Y.S.2d 483 (1940); In re Fecheimer Fischel, 212 F. 357 (2d Cir. 1914); Goldman v. Coppola, 149 Conn. 317, 179 A.2d 817 (1962). In Goodman v. Global Indus., 80 Cal.App.2d 583, 182 P.2d 300 (1947), the corporation had contracted with the plaintiff to repurchase his stock at the price originally paid for it whenever the plaintiff should so elect. The pertinent California statute provided that in such situations the corporation could repurchase only out of earned surplus. The court held that the plaintiff could not recover if the corporation had no earned surplus. In Richards v. Ernst Wiener Co., 207 N.Y. 59, 100 N.E. 592 (1912), the agreement required the corporation to repurchase the plaintiff's stock if certain conditions occurred. The court held the contract to be legal but unenforceable if the corporation had no earned surplus. Accord, In re Tichenor Grand Co., 203 F. 720 (S.D.N.Y. 1913). In Steinbugler v. William C. Atwater & Co., Inc., 28 N.Y.S.2d 613 (Sup. Ct.1941), the repurchase agreement and the original purchase were held not to be severable. The court found the repurchase provision to be unenforceable if at the time for payment the corporation had no earned surplus. See Conrad v. Olds, 110 Ind.App. 208, 37 N.E.2d 297 (1941).

The plaintiff's motion for summary judgment is denied. Settle an order on or before ten (10) days from the date hereof.