694 F.2d 179
 In the Matter of The HAWAII CORPORATION, Debtor,
Lawrence I. WEISMAN, Stanley S. Goldberg, Sonia Goldberg,
Hamilton Associates, Model Associates, Inc., S.
Rosenthal & Co., Inc., David Weinberg,
William Weinberg, et al.,
Claimants-Appellants,
v.
John T. GOSS, Trustee-Appellee.
 No. 81-4217.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1982.
Decided Dec. 6, 1982.
 
 Lawrence I. Weisman, in pro per.
 Don Jeffrey Gelber, Honolulu, Hawaii, for trustee-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHOY, SNEED and FARRIS, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 The Hawaii Corporation (THC) is a corporate bankrupt undergoing reorganization pursuant to Chapter X of the Bankruptcy Act of 1898. Appellants are a group of investors who appeal from an order of the district court, sitting in bankruptcy, subordinating certain of the investors' claims against THC. Because we find that subordination was appropriate in this case, we affirm.
 
 I.
 FACTS
 
 2
 Appellants' claims against THC's bankruptcy estate arise through a series of transactions involving four separate entities. Prior to 1969, appellants held capital stock and 6 1/4% Collateralized Convertible Subordinated Notes (APG 6 1/4% notes) issued by the American Pacific Group, Inc. (APG). In 1969, appellants sold the APG stock and APG 6 1/4% notes to the National Environmental Corporation (NATEC) in return for promissory notes (NATEC notes). As collateral for the NATEC notes, NATEC pledged the APG stock and the APG 6 1/4% notes back to appellants.
 
 
 3
 Appellants obtained additional collateral on NATEC's indebtedness in 1971. NATEC sold its holding of APG stock and APG 6 1/4% notes to APG. In return, NATEC received a cash downpayment and new APG promissory notes (APG-NATEC notes). NATEC then pledged to appellants a portion of the APG-NATEC notes equal to the amount that NATEC owed appellants. Significantly, APG's repurchase of its own stock and notes was made subject to NATEC's preexisting pledge to appellants. Thus, appellants retained their security interest in the underlying APG stock and APG 6 1/4% notes while gaining an additional security interest in the newly issued APG-NATEC notes.
 
 
 4
 APG reorganized in 1972 with its wholly owned subsidiary, THC, surviving as the reorganized corporate entity. THC acquired all of APG's assets and assumed all of its debts and liabilities by issuing THC stock to APG. APG then liquidated by distributing the THC stock pro-rata to APG shareholders. In 1976, THC commenced bankruptcy proceedings.
 
 
 5
 NATEC now has defaulted on its indebtedness leaving appellants with three claims against THC's bankruptcy estate. It is undisputed that appellants participate in THC's Plan of Reorganization both as Class 4 general unsecured creditors (through their security interest in APG 6 1/4% notes) and as shareholders (through their security interest in APG stock which was exchanged pro rata for THC stock). The only issue on this appeal is the propriety of the district court's order whereby appellants' third claim, which is based on their security interest in the APG-NATEC notes, was subordinated to the claims of THC's general unsecured creditors.
 
 II.
 SUBORDINATION
 
 6
 Initially, appellants contend that the trustee's Application to Subordinate Claims should have been brought as an adversary proceeding pursuant to Bankruptcy Rule 10-701. We disagree. The district court heard argument on the trustee's application and appellants' opposing motion in a noticed hearing. This procedure was in accordance with section 197 of the Bankruptcy Act and Bankruptcy Rule 10-302(a). An adversary proceeding is not the proper forum for deciding questions of the classification of creditor's claims. National Telephone Co. v. O'Brien, 450 F.Supp. 815 (D.Conn.), aff'd sub nom. In re National Telephone Co., 578 F.2d 1369 (2d Cir.1978), and O'Brien v. Earl, 578 F.2d 1369 (2d Cir.1978).
 
 
 7
 The district court based its subordination of appellants' APG-NATEC claim on McConnell v. Estate of Butler, 402 F.2d 362 (9th Cir.1968). We held in McConnell that claims against a bankruptcy estate that are based on notes issued by a corporation for the purchase of its stock should be classified separately from, and subordinate to, the claims of general unsecured creditors. Id. at 367; accord Robinson v. Wangemann, 75 F.2d 756 (5th Cir.1935); In re Peoples Loan & Investment Co., 316 F.Supp. 13 (W.D.Ark.1970).
 
 
 8
 The APG-NATEC notes were issued in exchange both for APG's own stock and 6 1/4% notes. Thus, McConnell controls with respect to at least that portion of the APG-NATEC notes that was issued to repurchase APG's own stock. The fact that NATEC and not appellants sold the stock to APG is of no consequence. Appellants' claim against THC's estate derives from NATEC's holding of APG-NATEC notes. They can have no greater claim than had NATEC.
 
 
 9
 The fact that THC subsequently assumed APG's liability on the APG-NATEC notes changes nothing. The McConnell rule is based on the recognition that the capital stock of a corporation is actually a trust fund for its creditors. A corporation that acquires by purchase its own stock in fact distributes a portion of its assets to the selling stockholder. Robinson v. Wangemann, 75 F.2d at 757. Because of this fact, when debt securities are issued in exchange for a company's own stock, " '[i]t is necessary to a recovery that the corporation should be solvent and have sufficient surplus to prevent injury to creditors when the payment is actually made.' " McConnell, 402 F.2d at 366 (quoting Robinson v. Wangemann, 75 F.2d at 757-58) (emphasis in original). Until the APG-NATEC notes were paid, appellants' claim on the assets of the issuing corporation was deemed to be that of a shareholder, subordinate to general unsecured creditors. The APG/THC reorganization simply substituted the stock of THC for the stock of APG. It did not elevate appellants' claim to equality with the general unsecured creditors of the surviving corporate entity.
 
 
 10
 That portion of the APG-NATEC notes that APG issued to repurchase its own 6 1/4% notes presents a different question. According to the trustee's calculations, the APG-NATEC notes were allocable 80% to the repurchase of stock and 20% to the repurchase of 6 1/4% notes. McConnell is generally not applicable when a corporation issues new debt instruments in exchange for previously issued debt.
 
 
 11
 That rule does not apply to any portion of the APG-NATEC notes, however. To understand why this is so it must be remembered that when appellants sold APG 6 1/4% notes to NATEC they retained as collateral a security interest in those notes. The subsequent sale by NATEC to APG was made subject to this security interest of the appellants. Both the trustee and the district court fully acknowledge the legitimacy and priority of appellants' security interest in the APG 6 1/4% notes. The claim which this interest represents has not been subordinated.
 
 
 12
 Because THC remains liable to appellants on the APG 6 1/4% notes, the issuance by APG of the APG-NATEC notes and NATEC's pledge to appellants of a portion of those notes resulted in enhancing the appellants' security with respect to the APG 6 1/4% notes. It would be improper to provide the appellants at the expense of other creditors two unsubordinated claims when in fact one adequately represents the value of the property given in exchange for the claims. The situation might be different if new and additional value had been given by appellants in exchange for the APG-NATEC notes. This was not the case, however.
 
 
 13
 On these facts we hold that it was proper to subordinate appellants' entire claim on the APG-NATEC notes.
 
 
 14
 AFFIRMED.