**In re the CHARTER COMPANY, et al., Debtors.**

**Bankruptcy Nos. 84–289–BK–J–GP–84–332–BK–J–GP and 85–1033–BK–J–GP.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Aug. 14, 1986.

Stephen D. Busey, Jacksonville, Fla., Levin & Weintraub & Crames, New York City, for debtors.

Thomas M. Baumer, Jacksonville, Fla., Moses Silverman, New York City, for Carey.

Joel B. Zweibel, New York City, for Unsecured Creditors' Committee.

Jack Gross, New York City, for Oil Committee.

Morris Macey, Atlanta, Ga., for Equity Security Holders' Committee.

Ray Shapiro, Philadelphia, Pa., for American Financial Corp.

Jerome J. Schlichter, East St. Louis, Ill., for Dioxin Committee.

## ORDER SUSTAINING IN PART DEBTORS' OBJECTION TO ALLOWANCE OF CLAIM OF EDWARD M. CAREY

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter is before the Court upon debtor's objection to allowance of claim of Edward M. Carey.

### I. Facts

Mr. Carey became a shareholder when he sold Carey Energy Corporation to debtor in 1979. In return, he received $4,000,000 in cash and 160,000 shares of Series I Convertible Preferred Stock. Each share of Series I Convertible Preferred Stock was convertible into 15.0156 shares of common stock. By separate agreement, Mr. Carey was permitted to hold and vote no more than 480,500 shares of common stock at one time.

On February 25, 1983, debtor purchased from Mr. Carey 126,000 shares of preferred stock and 480,500 shares of common stock. Mr. Carey received $5,000,000 in cash and three unsecured negotiable notes: (1) 13.5% Seven-Year Subordinated Note in the principal amount of $12,934,406; (2) 13.5% Seven-Year Subordinated Note in the principal amount of $2,500,000; and (3) 14% Twenty-Year Subordinated Note in the principal amount of $17,236,061. The 14% note for $17,236,061 and the 13.5% note for $12,934,-406 were given in exchange for the preferred stock. The $5,000,000 in cash and the 13.5% note in the amount of $2,500,000 were given in exchange for the common stock.

At the same time, Charter Security Life Insurance Company, a subsidiary of debtor, loaned $15,000,000 to Carey Capital Corporation, a corporation owned by Mr. Carey, pursuant to a loan agreement. The loan carried an interest rate of 15.5% and was secured by a pledge of the 14% note in the amount of $17,236,061.

The parties stipulate that on the date of purchase, debtor was not insolvent and that the purchase agreement was valid and enforceable. Further, the parties agree that on February 23, 1983, the common stock had a cash value of $15.00 per share, a book value of $24.00 per share, and a market value of between $11.25 and $13.25 per share.

The purchase agreement was publicly disclosed in a press release and in debtor's reports filed with the Securities and Exchange Commission.

Debtor filed for relief under 11 U.S.C. Chapter 11 on April 20, 1984, and is considered insolvent as of that time. The closing market price of debtor's common stock on April 19, 1984, was $3.50 per share.

Prior to the filing of the petition, the 14% note in the amount of $17,236,061, was transferred to Charter Security Life in full satisfaction of the $15,000,000 loan to Carey Capital Corporation, and interest and principal payments were made on the other two notes. The balance due on the notes as of the filing date was $13,493,718.17 representing $11,086,633.72 in principal and $221,428.87 in interest, on the $12,934,046 note and $2,142,857.15 in principal and $42,-798.43 in interest on the $2,500,000 note.

Debtor listed claimant in its schedules as holding an unsecured, undisputed claim in the amount of $13,493,718.16, including in-

terest, and Charter Security Life as holding an unsecured, undisputed claim in the amount of $17,707,229. Mr. Carey filed a proof of claim in the amount of $13,229,492 plus interest.

## II. F.S.A. § 607.017(4)

A claim is prima facie valid unless objected to by a party in interest. B.R. 3001(f). If a claim is objected to then the Court is to determine to what extent the claim is valid as of the day the petition for relief was filed. 11 U.S.C. § 502(b). A claim will be disallowed if under any applicable law the claim is unenforceable against the debtor or the estate for a reason other than it is contingent or unmatured. 11 U.S.C. § 502(b)(1). Debtor asserts that this claim is unenforceable under F.S.A. § 607.017(4) because it represents the amount owed under a stock purchase agreement, notwithstanding the fact that the claim is based on amounts due under negotiable notes, and debtor is now insolvent.

Section 607.017 of the Florida Statutes governs the rights of a corporation to acquire and dispose of its own shares. It states:

(1) A corporation shall have the right to purchase, take, receive, or otherwise acquire, hold, own, pledge, grant a security interest in, transfer, or otherwise dispose of its own shares, but purchase of its own shares, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted surplus.

(2) To the extent that earned surplus or capital surplus is used as the measure of the corporation's right to purchase its own shares, such surplus shall be restricted so long as such shares are held as treasury shares. Such restriction shall be allocated on a pro rata basis to the treasury shares, and upon the disposition or cancellation of any such shares, the restriction shall be removed to the extent it is attributable to the shares disposed of or cancelled....

(4) No purchase of, or payment for, its own shares shall be made by a corpora-

tion at a time when the corporation is insolvent or when such payment would make it insolvent.

F.S.A. § 607.017

Since the parties agree that debtor was insolvent on the date it filed its petition, the only question before the Court is whether each installment payment due under the unsecured, negotiable notes tendered to Mr. Carey in exchange for his stock, represents "payment for" the purchase of debtor's shares within the meaning of F.S.A. § 607.017(4).

This is a question of first impression in Florida. The only two cases interpreting Florida law which aid the Court are *Naples Awning & Glass, Inc., v. Cirou*, 358 So.2d 211 (Fla.2d DCA 1978) and *Baxter v. Lancer Industries, Inc.*, 213 F.Supp. 92 (E.D.N.Y.1963).

In *Naples*, the Florida Court was faced with the question of whether a promissory note given in partial payment for the purchase of stock by a corporation was enforceable. The note was secured by a mortgage on real property. The court found the note void in its entirety because the corporation had insufficient surplus capital to make the purchase on the day the purchase agreement was entered. *Naples* is distinguishable from this case because in this matter there is no dispute that debtor had sufficient surplus capital from which to purchase the shares on the day it entered the stock purchase agreement with Mr. Carey.

It is the strict interpretation of F.S.A. § 608.13(9)(b) in *Naples* which assists this Court in interpreting F.S.A. § 607.017(4).[1] Since the stock purchase agreement failed to comply with the terms of F.S.A. § 607.-017, the agreement was void and unenforceable. *Naples, supra*. The corporation was entitled to recover the entire amount of consideration tendered to Cirou and Cirou was entitled to return of his stock. *Id.* at 214.

---

1. F.S.A. § 608.13(9)(b) is the predecessor of F.S.A. § 607.017. Section 607.017 became effective January 1, 1975. See Florida General Corporation Act, F.S.A. § 607.017 (1975).

In *Baxter,* the New York court was faced with interpreting F.S.A. § 608.-13(9)(b). In the absence of Florida caselaw, the court looked to the law of other jurisdictions. *Id.* at 96. The *Baxter* court stated that:

> The purpose of this type of statute is the protection of the corporate creditors and the other shareholders. Corporate power to purchase its own stock has been frequently abused. When done by faltering corporations it was oft intended to create preferences to the detriment of creditors and the remaining shareholders. Such statutes seek to preserve the margin of safety supplied by the real value of contributed capital.... The withdrawal of assets by a shareholder on sale of his shares to the corporation has the same effect upon creditors as the payment of a dividend and should thus be allowed only when the corporation could properly declare a dividend.

*Id.* The court further stated that the statute must be read into the agreement since the agreement is unenforceable unless the requirements of the statute are met. *Id.* Even if the agreement was valid when made, its enforcement must be denied if the corporation's financial position at the time it is called upon to make payment is lacking sufficient funds. *Id.*

Although *Naples* and *Baxter* are not controlling, the decisions set the tone by which this Court must interpret F.S.A. § 607.-017(4). The plain language of subsection (4) states that the corporation cannot make "payment for" its own shares at a time when it is insolvent. F.S.A. § 607.017(4). Other jurisdictions have interpreted when "payment" occurs. See *Matter of Flying Mailmen Service, Inc.,* 539 F.2d 866 (2d Cir.1976) [Installments due under a stock purchase agreement are unenforceable once the corporation becomes insolvent even though the agreement was enforceable when entered.]; *McConnell v. Estate of Butler,* 402 F.2d 362 (9th Cir.1968) [Payment is made when assets are actually being paid out of the corporation and it is at this time that the corporation must be solvent.]; *In re Dawson Brothers Construction Co.,* 218 F.Supp. 411 (N.D.N.Y. 1963) [Corporation must be solvent at time payments under installment notes are due in order for notes evidencing stock purchase to be enforceable.] *Cf. Williams v. Nevelow,* 513 S.W.2d 535 (Tex.1974) [Court found secured note enforceable where corporation solvent at time it entered stock purchase agreement but insolvent when payments came due under the note.]

None of the cases cited by the parties interpret a statute containing the "payment for" language which is found in F.S.A. § 607.017(4). The only court which discusses this type language is the Texas Supreme Court in *Williams v. Nevelow, supra.* At the time the *Williams* court addressed the issue of whether payments due under a secured note evidencing a stock purchase could be made if the corporation was insolvent, the controlling Texas statute only prohibited "purchase" at a time the corporation was insolvent. There was no question that the corporation had been solvent at the time it exchanged its promissory note for the stock. In dicta, the *Williams* court stated that it would not necessarily change its position if it had been interpreting the amended Texas statute which prohibited purchase or payment while the corporation was insolvent. *Williams, supra* at 538. However, the *Williams* court did state that the correct interpretation was a matter for the legislature. *Id.* at 539.

 This ·Court finds that the language of F.S.A. § 607.017(4) is clear and unambiguous. Regardless of how direct or indirect the transaction is structured if in actuality assets are going out of the corporation to pay for shares the corporation purchased, the payment cannot be made if the corporation is insolvent. The statute does not contain any mitigating factors. If the corporation is insolvent, the payment cannot be made.

 The Court does recognize that its decision could directly conflict with the broad policy behind Article 3 of the Commercial Code which encourages free nego-

tiability of commercial paper.[2] However, the Court is not interpreting F.S.A. § 607.-017(4) in light of a holder in due course trying to enforce a note which evidences a stock purchase agreement. If the legislature intends for a different result depending upon whether a negotiable or nonnegotiable note is tendered then it is up to it to clearly indicate this in the statute. Absent guidance from the legislature, the Court must follow the plain language of the statute.

## III. The Remedy

■ Since the Court found that the remaining payments due under the notes cannot be made because debtor is insolvent, the Court is faced with determining the appropriate remedy. Section 607.017(4) states only that payment cannot be made, it does not state how the claim is to be treated.

In *Naples*, where the court found the purchase agreement unenforceable from the outset, the court returned the seller to equity. *Naples, supra* at 214. The *Naples* court directed the corporation to return the stock and directed the seller to return the full consideration tendered. *Id.* This Court cannot follow the remedy fashioned in *Naples* to the letter since debtor became insolvent after part of the installment payments were paid. At best, the Court could direct debtor to return a proportionate number of shares of stock which correlate to the amount still due under the notes, and the remaining payments due under the notes would be cancelled. The main problem with this remedy is that the series of preferred stock held by Mr. Carey has been cancelled. The Court could however convert the appropriate number of preferred shares into common shares and return Mr. Carey to equity as a holder of common shares only. This remedy treats Mr. Carey unfairly since upon entering the stock purchase agreement, Mr. Carey gave up his position on the Board of Directors. There is no way that the Court could return Mr. Carey to the same position that he held prior to entering the stock purchase agreement.

Alternatively, the Court could follow the course of other courts and subordinate Mr. Carey's claim to that of the general unsecured creditors. See *Matter of Hawaii Corp.*, 694 F.2d 179 (9th Cir.1982); *McConnell v. Estate of Butler*, 402 F.2d 362 (9th Cir.1968); *Robinson v. Wangemann*, 75 F.2d 756 (5th Cir.1935); and *In re Dawson Brothers Construction Co.*, 218 F.Supp. 411 (N.D.N.Y.1963). If the Court subordinated Mr. Carey's entire claim then he would be entitled to payment in the amount of $13,493,718.16, after payment of all creditors. Although it is within the Court's equitable power to utilize this remedy, the Court finds that this remedy does not carry out the intent of F.S.A. § 607.017(4). As recognized by both the *Naples* and *Baxter* courts, the purpose behind this statute is the protection of creditors and other shareholders. Subordination only protects the creditors, not the other shareholders of debtor.

The most equitable remedy which carries out the purpose of F.S.A. § 607.017(4) is to return Mr. Carey to equity holder status as of the day prior to filing and to allow him a general, unsecured claim in the amount of $2,971,942.40.[3] This remedy protects both the creditors and shareholders of debtor,

---

**2.** Mr. Carey asserts that delivery of the Notes by debtor constituted payment and thereby extinguished debtor's obligation to purchase the stock, thus creating separate and distinct legal obligations under the terms of the Notes and pursuant to § 3–802(1) of the Uniform Commercial Code. If the Court adopted this position then the Court would be elevating form over substance and giving parties to a stock purchase transaction clear license to circumvent F.S.A. § 607.017(4) to the detriment of creditors and other shareholders.

**3.** As of the day prior to filing, there remained 37.48% due on the $12,934,406 note and 29.14% due on the $2,500,000 note. The $2,971,942.40 was computed as follows:
a) 37.48% x 126,000 shares of preferred stock x 15.0156 conversion ratio x $3.50/share of common stock
b) 29.14% x 480,500 shares of common stock x $3.50/share of common stock.
The $3.50 figure is the market value of debtor's common stock as of the day prior to filing.

and places Mr. Carey in the best position possible as of the day of filing.

Wherefore, it is ORDERED:

1. Debtor's objection to the allowance of claim filed by Edward M. Carey is sustained in part.

2. The claim is allowed as unsecured to the extent of $2,971,942.40.