**In re The CHARTER COMPANY, et al., Debtors.**

**Bankruptcy Nos. 84–289–BK–J–GP through 84–332–BK–J–GP inclusive, and 85–1033–BK–J–GP.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 5, 1986.

See also, Bkrtcy., 63 B.R. 680.

Steven D. Busey, Jacksonville, Fla., for debtor.

Howard Sedran, Philadelphia, Pa., for Dioxin claimants.

Morris W. Macey, Atlanta, Ga., for Equity Committee.

Joel B. Zweibel, New York City, for Unsecured Committee.

Jack Gross, New York City, for Oil Committee.

Raymond L. Shapiro, Philadelphia, Pa., for AFC.

Moses Silverman, New York City, for Carey.

Daniel R. Deveraux, St. Louis, Mo., for Robert McGraw.

Benjamin Ackerly, Richmond, Va., for Syntex.

Stephen R. Baer, Washington, D.C., for Government.

A. August Quesada, Jr., Jacksonville, Fla., Michael G. Kohn, Cincinnati, Ohio, Nicholas E. Chimicles, Haverford, Pa., Herbert E. Milstein, Washington, D.C., Stanley R. Wolfe, Philadelphia, Pa., for objector.

## ORDER DENYING MOTIONS TO STRIKE OBJECTIONS AND SUSTAINING IN PART OBJECTIONS TO PROOF OF CLAIM FILED BY AMERICAN FINANCIAL CORPORATION

GEORGE L. PROCTOR, Bankruptcy Judge.

A group of claimants suffering from dioxin contamination and a certified class in the Charter securities litigation and individual members thereof object to the allowance of the stock redemption claim filed by American Financial Corporation.[1] The debtor and American Financial Corporation ("AFC") filed motions to strike the objections. A hearing was held at which time motions to strike the objections and the objections on the merits to the stock redemption claim of AFC were heard.

### I. Facts

On October 14, 1982, debtor purchased from AFC and its subsidiaries a total of 393,200 shares of common stock; 60,000 shares of Series A preferred stock, convertible into five shares of common stock each; 350,000 warrants to purchase common stock at a price of $5.00 per share; and 1,000,000 warrants to purchase common stock at a price of $4.50 per share. As consideration for this purchase, AFC received a 16¼% subordinated note in the principal amount of $21,748,000. Of this total, $4,718,000 represented common stock; $3,600,000 represented the Series A preferred stock; $3,491,800 represented the warrants to purchase common stock at $5.00 per share; and $9,938,200 represented the warrants to purchase common stock at $4.50 per share. The expiration date for the warrants to purchase common stock at $5.00 per share and $4.50 per share was August 24, 1983, and December 23, 1985, respectively.

The terms of the notes provided that interest would accrue at the rate of 16.25% per annum until October 13, 1987. Such interest was to be compounded semi-annually and was deemed to be added to the principal balance of the note semi-annually on the thirteenth day of each April and October through the year 1987. At the end of the five-year term, the estimated principal balance of the note would be $47,498,569. No interest was due on the note until sixty-six months from such date or October 13, 1992. From that date forward, debtor was obligated to pay interest at the rate of 16.25% semi-annually on the unpaid balance until final maturity of the note.

Debtor filed for relief under 11 U.S.C. Chapter 11 on April 20, 1984. As of that date, no principal or interest had been paid on the 16¼% subordinated note held by AFC. AFC filed proof of claim number 2838 (filed in proceeding No. 84–289), in the amount of $27,571,000 for the balance owed on the note.

At the hearing the parties (except debtor) filed a joint stipulation of fact. These undisputed facts are: (1) debtor was solvent on October 14, 1982, and was not "insolvent" within the meaning of Florida Statute § 607.017(4), either immediately before or after the execution of the Securities Purchase Agreement; and (2) as of April 20, 1984, debtor was and is unable to pay

---

1. Immediately prior to the subject hearing, the Court disallowed the class proof of claim filed on behalf of the Charter Securities litigation plaintiffs. At the subject hearing, no one raised the issue of the objector's standing, as representatives of the class claimants, to object as a party in interest to the claim filed by AFC. The Court will assume that the objector has an interest separate and distinct from the class proof of claim upon which to base its standing as a party in interest.

its debts as they come due and is therefore insolvent within the meaning of Florida Statute § 607.017(4).

### I. *Motions to Strike Objections to Claim (Standing)*

As grounds for striking the objections to claim, debtor and AFC assert: (1) that a creditor lacks standing to object to the claim of another creditor in a chapter 11 proceeding where the debtor acts as debtor-in-possession and the objecting creditor has not shown that it first requested the debtor-in-possession to take the appropriate action and that the debtor refused to act without justification; and (2) that it would unduly delay administration of the estate if these creditors are allowed to object to this claim on the eve of confirmation when the non-objecting creditor is a proponent of the plan of reorganization and the plan incorporates a compromise reached between the debtor and the non-objecting creditor.

At the hearing, the Court denied the motions *ore tenus,* finding that § 502 of the Bankruptcy Code and Bankruptcy Rule 3007 allow any party in interest to object to a proof of claim.

Section 502(a) states that "(a) claim or interest, ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Although "party in interest" is not defined by the Bankruptcy Code, the legislative history to § 502 states that "[t]he Rules and case law will determine who is a party in interest for purposes of objection to allowance." H.R. No. 95–595, 95th Cong., 1st Sess. 352 (1977); S.Rep. No., 95–989, 95th Cong., 2d Sess. 62 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5848, 6308.

Most courts have determined that a "party in interest" is a party who has a pecuniary interest in the estate being administered. *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706 (8th Cir.1979). See also *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985); *In re Williamson,* 43 B.R. 813 (Bkrtcy.D.Utah 1984). Both the objecting parties in this proceeding meet this test since they assert unsecured claims against the estate.

Most courts, however, have limited the right of a general creditor to object to the claim of another creditor in certain instances in order to promote a more orderly administration of the estate, i.e., in cases where a trustee has been appointed to represent the interests of all general creditors. See *Schreibman v. Walter E. Heller & Co., etc.,* 446 F.Supp. 141 (D.C.P.R.), *aff'd,* 577 F.2d 723 (1st Cir.1978); and *In re Drive-In Development Corp.,* 371 F.2d 215 (7th Cir.1966), *cert. denied,* 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 629 (1967).

This limitation was recognized in the Advisory Committee notes to Bankruptcy Rule 3007. The notes of the Advisory Committee state that:

> While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to § 502(a) of the Code, however, any party in interest may object to a claim. But under § 704 the trustee, if any purpose would be served thereby, has the duty to examine proofs of claim and object to improper claims.

In a case where a trustee has been appointed, the creditor must request the trustee to object to the claim and if the trustee refuses then the court may grant the creditor leave to proceed. *In re Parker Montana Co.,* 47 B.R. 419, 421 (USDC, D.Mont.1985), citing, *In re Meade Land and Development Co., Inc.,* 1 B.R. 279 (Bkrtcy, E.D.Pa.1979); *Fred Reuping Leather Company v. Fort Greene Nat. Bank,* 102 F.2d 372 (3rd Cir.1939); and *In re Patterson-MacDonald Shipbuilding,* 288 Fed. 546 (9th Cir.1923). *Cf. In re Toledo Equipment Co., Inc.,* 35 B.R. 315 (Bkrtcy. N.D.Ohio, W.D.1983) [unsecured creditor's committee lacks standing to file a preference action in absence of a showing that a request was made of the debtor-in-possession to initiate the action]; and *In re Ludwig Honold Mfg. Co.,* 30 B.R. 790 (Bkrtcy. E.D.Pa.1983) [general creditor

lacks standing to maintain an action to equitably subordinate another creditor's claim to that of the general creditor when the trustee has filed a similar action against the creditor].

■ Debtor and AFC suggest that the judicially created requirement of "demand" applies in a chapter 11 proceeding where a debtor-in-possession has been authorized to act for the debtor. The reasoning behind this assertion is that a debtor-in-possession has all the rights and powers of a trustee including the responsibility to object to the allowance of claims if objection is warranted. See 11 U.S.C. §§ 704(5) and 1107. Since the debtor-in-possession is charged with the same duties as a trustee under § 704(5), the debtor-in-possession would also take into consideration the interests of all creditors when determining whether it should object to the allowance of a proof of claim.

The courts have rejected this argument because a debtor is not imposed with the duty of representing general creditors in this context. See *In re Drive-in Development Corp., supra; Schreibman v. Walter E. Heller & Co., Etc., supra; Matter of Levy*, 54 B.R. 805, 808 (Bkrtcy. S.D.N.Y. 1985). To require a creditor in a chapter 11 proceeding to first request the debtor-in-possession to take action would be an act in futility in most instances. If the debtor-in-possession has not already taken the action it may be because it has entered into a compromise agreement with the non-objecting creditor which is beneficial to the debtor but may or may not be beneficial to the general creditors. Objecting to the allowance of the non-objecting creditor's proof of claim is one of the most viable means by which a creditor can show that the compromise is not in the best interests of the general creditors. Since the law does not impose a duty on the debtor-in-possession to act in the best interest of all general creditors, the Court will not disregard the plain language of § 502(a) and limit the right of general creditors to object to the allowance of a proof of claim in a chapter 11 proceeding. The motions to strike are denied.

## II. Objections to Claim of AFC

The objections to the stock redemption claim filed by AFC are premised on an order entered August 14, 1986, wherein this Court sustained in part debtor's objection to the allowance of a stock redemption claim filed by Edward M. Carey. See *In re Charter Co.*, 63 B.R. 680 (Bkrtcy.M.D.Fla. 1986). In the order, this Court found that Florida Statute § 607.017(4) prohibited debtor from making payment for the repurchase of shares of its own stock at a time when it was insolvent and accordingly reduced Carey's claim. AFC asserts that its stock redemption claim is so substantially different from the Carey stock redemption claim that the Court's previous ruling does not control.[2]

### a. Florida Law Governs

The first matter which must be addressed is whether Ohio law or Florida law governs the issue of the validity and enforceability of the stock repurchase agreement. In 1982 when debtor and AFC entered the Securities Purchase Agreement, they expressly provided that the "[d]ocuments shall be deemed to be contracts made under the laws of, executed, and delivered in the state of Ohio, and for all purposes shall be governed by and construed in accordance with the laws of said state."[3]

■ There is no question that the parties to the contract had the right to determine the nature of their contractual obligations, and to provide for the use of the laws of a particular state in governing the agreement. See generally *Restatement* (Second) Conflicts of Laws, § 187 at comment e. See also *Jemco, Inc. v. United Parcel Service Inc.*, 400 So.2d 499, 501 (Fla. 3rd DCA 1981); 10 Fla.Jur.2d, Conflict of Laws § 12.

---

2. Debtor did not participate in the hearing on the objections to claim of AFC.

3. "Brief of American Financial Corporation in Support of its Stock Redemption Claim," filed December 1, 1986, p. 16.

AFC's argument must fail, because the Court is not being asked to construe the contract, but is to decide whether a corporation created under the laws of Florida has the authority to make "payment for" shares of stock it repurchased at a time it is insolvent.

■ A corporation is a legal entity by fiction of law. Its existence depends upon and is determined by the statute under which it is created. Section 607.404(1) of the Florida Statutes states that "[s]ubject to the provisions of this section and *existing* contract rights, the provisions of this act shall apply to any corporation in existence on the effective date of this act...." (emphasis added). See F.S.A. § 607.007. This section is part of the Florida General Corporation Act which was added by Laws 1975, c. 75–250, effective January 1, 1976. The provision of the Florida General Corporation Act which is pertinent to the matter before the Court is section 607.017(4) which states that:

> No purchase of, or payment for, its own shares shall be made by a corporation at a time when the corporation is insolvent or when such payment would make it insolvent.

F.S.A. § 607.017(4) (1975). Since Charter's existence as a Florida corporation predates the Florida General Corporation Act and the Act in turn predates the time the Securities Purchase Agreement was entered into by AFC and debtor, § 607.017(4) unaltered by the Stock Purchase Agreement controls.

#### b. Florida Statute § 607.017(4)

Section 607.017(4) prohibits a corporation from paying for "shares" at a time it is insolvent. This term shares is defined in the Florida General Corporation Act to mean "... the units into which the proprietary interest in a corporation is divided." F.S.A. § 607.004(4). Through the Securities Purchase Agreement debtor purchased its own shares and warrants. There is no

question that the portion of the note given as consideration for the purchase of shares comes within the purview of § 607.017(4) but there is an issue as to that portion of the note representing the purchase of warrants.

■ A stock warrant is "[a] certificate entitling the owner to buy a specified amount of stock at a specified time(s) for a specified rate." Black's Law Dictionary, Fifth Edition p. 1422. The case law is conclusive that stock warrants are not the equivalent of shares of stock, they are only options to purchase shares. See *Helvering v. Southwest Consolidated Corporation,* 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789 (1942). *Cf. Redding v. C.I.R.,* 630 F.2d 1169 (7th Cir.1980); *Gordon v. C.I.R.,* 424 F.2d 378 (2d Cir.1970); *C.I.R. v. Baan,* 382 F.2d 485 (9th Cir.1967); *Carlberg v. United States,* 281 F.2d 507 (8th Cir.1960). The holder of a stock warrant does not have a proprietary interest in the issuing corporation. See *Kusner v. First Pennsylvania Corporation,* 395 F.Supp. 276 (E.D.Pa. 1975), *rev'd on other grounds,* 531 F.2d 1234 (3rd Cir.1976).

Since a warrant holder does not have a proprietary interest in the corporation, a warrant cannot be a "share" within the meaning of Florida Statute § 607.004(4). Accordingly, the Court is without authority to go behind the Stock Purchase Agreement as it pertains to the purchase of warrants.

Even though the a single note was tendered as consideration for the stock repurchase agreement, the Court finds that it must bifurcate the transaction in order to uphold Florida Statute § 607.017(4). To hold otherwise would allow parties to a contract to circumvent the restrictions imposed upon a corporation by the state laws under which the corporation is created. This decision to bifurcate the claim does not deny AFC its right to due process especially since the restriction imposed by § 607.017(4) was a known restriction upon

the debtor at the time the parties entered into the contract.

■ The remaining issue is whether debtor can pay for the purchase of its own shares at a time when it is insolvent. AFC asserts that the note tendered as consideration for the shares was "payment" within the meaning of § 607.017(4), that this payment was made at a time when debtor was solvent and, therefore, the note is valid and enforceable in this proceeding. The Court rejected a similar argument in the matter concerning debtor's objection to the stock redemption claim of Mr. Carey. See *In re Charter Co.*, 63 B.R. 680, 683 (Bkrtcy. M.D.Fla.1986).

**In the Carey matter, the Court held that** "[r]egardless of how direct or indirect the transaction is structured if in actuality assets are going out of the corporation to pay for shares the corporation purchased, the payment cannot be made if the corporation is insolvent." *Id.* at 683. The Court adheres to this rationale.

If debtor attempted to pay the amount due AFC on the note at this time, it would be making "payment for" the purchase of shares of stock. The Court cannot allow this since debtor is insolvent. Accordingly, the Court choses to follow the remedy applied in the Carey matter and allow the unsecured claim filed by AFC in the amount of $15,856,200.[4]

Wherefore it is ORDERED as follows:

1. Motions to Strike are DENIED;

2. Objections to the allowance of claim of AFC are sustained in part.

3. The claim of AFC is allowed as an unsecured claim in the amount of $15,856,-200.

4. The $15,856,200 is computed as follows:
   a) 393,200 shares of common stock x $3.50/share = $1,376,200;
   b) 60,000 shares of preferred stock, convertible into 5 shares of common stock x $3.50/share of common stock ɳ $1,050,000;
   c) $3,491,800 representing the warrants to purchase common stock at $5.00 per share as provided for in the note; and

d) $9,938,200 representing the warrants to purchase common stock at $4.50 per share as provided for in the note.
The $3.50 figure is the market value of debtor's common stock as of the day prior to filing. See *In re Charter Co.*, 63 B.R. 680 (Bkrtcy, M.D.Fla. 1986).