Jack Goldberg *et al. vs.* Chester N. Peltier *et al.*

MAY 13, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Condon, J. This is an action of assumpsit that was tried in the superior court without a jury and resulted in a decision for the plaintiffs to which the defendants excepted. They have brought the case here on that single exception under which they contend that such decision is contrary to the law and the evidence and the weight thereof.

The evidence discloses that on June 6, 1947 the Esquire Manufacturing Company, a Rhode Island corporation, made a promissory note for $2000 payable to plaintiffs William Bergman and Jack Goldberg in monthly installments of $83.33 on the third day of every month thereafter until the principal sum was paid in full. The note further provided that failure to pay any installment of principal

or interest when due or within ten days thereafter would cause all of the balance of the principal then unpaid to become due and payable. The following also appeared on the face of the note over the signatures of the defendants Chester N. Peltier, Robert T. Whittle and Cherry M. Whittle: "We, the undersigned, hereby endorse the above note and each of the undersigned hereby waives demand, protest and notice in respect to the above note and each installment payable thereunder, and hereby guarantee the payment of the same as above set forth." On or about August 14, 1947 a default occurred. After demanding payment of the note in full and not obtaining it, plaintiffs brought the instant action against these defendants on their contract of guaranty.

At the trial of the action in the superior court the plaintiffs rested after producing the note and introducing evidence of the circumstances surrounding its making and delivery. Defendants did not question the authenticity of the note but sought to avoid their obligation under it by introducing evidence of the financial condition of Esquire Manufacturing Company at the time the note was made. The substance of this claim was that the transaction between the plaintiffs and the corporation, which was the consideration for the note, had impaired the capital of the corporation in violation of general laws 1938, chapter 116, article II, §5 (g). That section, they point out, expressly provides "that no corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation."

It appears from the evidence that the capital stock of Esquire Manufacturing Company issued and outstanding prior to June 6, 1947 totaled 225 shares of no par value. The sole stockholders were plaintiffs Goldberg and Bergman and defendant Peltier, and each was the holder of 75 shares. The corporation was engaged in manufacturing curtains in Pawtucket in this state. The factory had been

orginally owned by Peltier but on March 29, 1947 it was taken over by the corporation which was organized on that date with the following officers: president, Jack Goldberg; vice president and secretary, Chester N. Peltier; treasurer, William Bergman. They were also the sole directors of the corporation. Apparently the business did not prosper, at least to the satisfaction of Goldberg and Bergman, and finally on June 3, 1947 each agreed to sell his shares to the corporation for $1500. This was to be paid as follows: $500 in cash to each of them and a promissory note for the balance of $2000, made payable to both and guaranteed by Peltier individually and also by Robert T. Whittle and his wife Cherry M. Whittle. At a special meeting of the directors on June 6, 1947 the transaction was unanimously approved by Goldberg, Bergman and Peltier for the corporation.

At the time the sale of stock was agreed to on June 3, 1947, the corporation did not have sufficient cash on hand to make a payment of $500 to each of the plaintiffs and it was necessary to sell some of the company's merchandise to realize the necessary cash. This was done by June 6, 1947. On that date the corporation was free of debt except that it owed unemployment compensation, social security and withheld income taxes in the amount of $73.22. According to a balance sheet dated May 31, 1947 that was prepared by defendant Robert T. Whittle before the instant transaction was completed, the total assets of the corporation were $4556.31. He made another balance sheet on June 8, 1947, two days after the transaction, to reflect the fiscal condition of the corporation as a result of the obligation it had assumed in buying the plaintiffs' stock. That balance sheet showed total assets of $6532.66, including plaintiffs' stock in the treasury at a value of $3000. Whittle testified that in his opinion as an accountant there was what he called a "surplus deficit" of $616.91 on May 31, 1947 and of $640.56 on June 8, 1947. And he further testified that as a

result of the transaction of June 6, 1947 there was an impairment of the capital of the corporation.

Whittle's method of compiling these balance sheets was subjected to cross-examination which developed that the balance sheet dated May 31, 1947 was prepared over the week end before the trial in the superior court opened on Monday, January 19, 1948, partly from books of the corporation and partly from what defendant Peltier had told him. The balance sheet of June 8, 1947 was substantially the same varying therefrom only in its showing of plaintiffs' stock in the treasury of the corporation and of the obligation which it assumed in consideration therefor. Peltier was also cross-examined as to the true financial condition of the corporation, he having taken care of the books of the company with the assistance of Whittle whom he personally hired. As a result of that cross-examination it developed that there were several items of value which were not correctly reflected in the balance sheet.

After carefully considering all of the testimony we are of the opinion that the trial justice reasonably could have found that the balance sheets did not reflect the true financial condition of the corporation and that the assets were substantially more than shown thereon. If he so found we think there would be lacking a fair preponderance of the evidence in proof of the defendants' contention that there had been an impairment of the capital of the corporation within the meaning of §5 (g) of the statute. Although the trial justice has not given the reasons for his decision, which he rendered from the bench immediately upon the conclusion of arguments of counsel, we are satisfied that it could have been validly rested upon the failure of defendants to substantiate their affirmative defense that the corporation's purchase of the plaintiffs' shares had impaired its capital.

In any event and regardless of the real basis of his decision we think it must stand, because even giving defendants' evidence of the financial status of the corpora-

tion its full value there is no evidence here which shows a violation of G. L. 1938, chap. 116, art. II, §5 (g), that, in the circumstances of this case as between the parties here involved, would render this note and contract of guaranty void. Clearly that section, in our opinion, refers to an impairment of capital *to the detriment of creditors.* In this respect it adds nothing to the common law.

It has been universally recognized under that law that the capital of a corporation is in the nature of a trust fund for the benefit of its creditors and for that reason it cannot lawfully be impaired. *Cleveland* v. *Jencks Mfg. Co.,* 54 R. I. 218, 221. There the court observed that "when the enforcement of a contract to purchase stock would impair the capital of a corporation *and bring the claim of the stockholder into competition with the claims of general creditors, such enforcement cannot be permitted."* We have italicized a part of the foregoing quotation to emphasize the true reason for holding such contracts unenforceable. That reason does not exist in the instant case. Here there are no general creditors. The unpaid taxes are a lien on the corporation's assets and as to them the state and federal governments are preferred creditors. Moreover, there being no general creditors involved and the corporation having been formed and conducted solely by these plaintiffs and defendant Peltier, we are of the opinion that it is not necessary to apply the law strictly so as to render unenforceable the obligations of Peltier and his coguarantors to pay this note.

Some of the cases from other jurisdictions which are cited by defendants seem to show that the deciding element leading the courts to hold a corporation's contract unenforceable on this ground is the adverse effect of the contract upon the rights of creditors in the corporation's capital. In *Topken, Loring & Schwartz, Inc.* v. *Schwartz,* 249 N. Y. 206, the court said that an agreement of a corporation to purchase its stock "will not be enforced, or will be considered illegal if the rights of creditors are affected."

In the case of *In re O'Gara & Maguire, Inc.*, 259 Fed. 935, it was held that such a purchase was void as against creditors. And in *Adam* v. *New England Investment Co.*, 33 R. I. 193, this court, in upholding the right of a corporation to purchase its own stock even before our present corporation statute was enacted, at page 206 quoted with approval the following from 4 Thompson on Corporations, sec. 4075: "The rule established by the undoubted weight of authority is that corporations, without express authority, and when not prohibited by their own charter or by statutes, may buy and sell their own shares provided they do so in good faith without intending to injure, and without in fact injuring, their creditors."

The law as thus declared, including the proviso, was not abrogated by the enactment of our corporation law but rather was approved and adopted as part of the statute law. Since in the case at bar the rights of creditors are not involved and the statute does not prohibit a corporation from purchasing its own stock if it does not impair its capital, we are of the opinion that as between the parties here involved the note in question is valid and may be enforced.

Defendants, however, argue further that the note is void because it violates chap. 116, art. II, §21, of the corporation law which reads as follows: "Any corporation may contract for any lawful purpose with one or more of its directors or with any corporation having with it a common director or directors, if the contract is entered into in good faith and is approved or ratified by a majority vote at any meeting of its board of directors: *Provided,* that the contracting or common director or directors shall not vote on the question and shall not be counted in ascertaining whether or not a quorum is present for this purpose at the meeting. A contract made in compliance with the foregoing provisions shall be voidable by the corporation complying with said provisions only in case it would be voidable if made with a stranger."

In support of this contention they rely upon *Matteson* v. *Sweet & Son, Inc.*, 58 R. I. 411, and *Sundlun* v. *Noank Shipbuilding Co.*, 135 Conn. 108, which followed it. Neither case is applicable to the facts in the case at bar and therefore need not concern us. The statute simply means that where the vote of a director with whom the corporation is dealing is necessary to constitute a majority in favor of the transaction or to make a quorum at the meeting, the transaction between the corporation and such director shall be voidable; but where the statute has been complied with it shall be voidable by the corporation only in case it would be voidable if made with a stranger.

Here there was a majority for the purchase of Goldberg's shares without his vote and for Bergman's shares without his vote. Likewise for each transaction providing for the purchase of a stockholder's shares there was a quorum without the presence of the director whose shares were being purchased. We do not think it was intended by the statute that the mere presence at the meeting of a director whose shares were being purchased would necessarily vitiate the transaction unless such presence was required for a quorum. And likewise it was not intended that his mere vote would invalidate the board's action unless it materially affected the result. In *Sundlun* v. *Noank Shipbuilding Co.*, *supra*, the facts were very different. There only two directors constituted the board and apparently the vote of the director who was contracting with the corporation was necessary to obligate the corporation. For this reason the court in that case quite correctly applied the statute following the reasoning of this court in *Matteson* v. *Sweet & Son, Inc.*, *supra*, in construing G. L. 1923, chap. 248, sec. 21, which now appears as G. L. 1938, chap. 116, §21.

The defendants' exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Robert Brown, Ralph P. Semonoff,* for plaintiffs.

*Haslam, Arnold & Sumpter, Charles H. Anderson,* for defendants.