DECISION
This matter is before the Court on related motions concerning an arbitration award entered on July 26, 2001. First, Defendant, William Daly, moves for summary judgment on the issue of whether the parties were obligated to resolve their dispute by binding arbitration. Second, Plaintiff moves to vacate the arbitration award. Third, Defendant moves to confirm the award.
 FACTS AND BACKGROUND
The Court will review the facts and travel of this case to put these motions in perspective. Window Concepts, Inc. (hereinafter, Concepts One) was formed in 1987 by Perry Mazza. After the company was formed, Defendant, Daly and William Marshall, a non-party to this litigation, joined the enterprise. Mazza remained majority shareholder. The company imported mini-blinds from Asia and sold them to retailers in the United States.
In 1993, Concepts One reorganized. Sourcing International Ltd. (hereinafter, Sourcing) was formed as the holding company for several other corporations. At all times material hereto, Sourcing's equity stock was owned as follows: 51% Pao, Co., Ltd., 25% Mazza, 12% Daly and 12% Marshall. During the course of reorganization, Sourcing and its shareholders negotiated a contract, Sourcing International Limited Shareholder and Redemption Agreement (hereinafter, SRA).
The SRA contains several provisions, including the following:
2.5 (a) Upon the termination by the Corporation (Sourcing) of a Shareholder's relationship as an employee and officer of the Corporation and all of its affiliated and subsidiary entities at any time prior to November 1, 1996 . . . the Corporation shall promptly "call" all, but not less than all, of the Common stock owned directly or beneficially by such Shareholder in accordance with the provisions of this Section 2.5. (Emphasis added).
7.1 (a) This Agreement shall terminate on the first to occur of any of the following events:
(1) Bankruptcy, receivership or dissolution of the corporation . . .
7.2 This Agreement shall be binding upon the heirs, executors and administrators of the Shareholders, upon the successor or successors of the Corporation and upon the authorized assigns of all the parties . . .
7.4 This Agreement shall be governed by and construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts in the United States of America without regard to conflict of laws principles which would require the application of the laws of another jurisdiction.
7.7 Any dispute hereunder shall be determined by submitting such matter to arbitration by a panel of three (3) arbitrators. . . The determination of the arbitrators shall be final, conclusive and binding on all parties, and any party shall be entitled to entry of judgment upon the award(s) of arbitration by a court of competent jurisdiction. The parties shall bear their respective costs of arbitration.
Defendant, Daly, served as an employee and an officer of Sourcing. It is undisputed that Sourcing terminated his employment with the company on March 10, 1995. The parties disagree as to whether Daly was also terminated as an officer of the company on that date. Thereafter, Sourcing never called or redeemed Daly's shares.
On August 31, 1995, Sourcing agreed to transfer its assets and liabilities to a newly formed corporation, Window Concepts, Inc. in exchange for Window Concepts, Inc.'s shares. As of that date, Sourcing dissolved, and the business continued under the name, Window Concepts, Inc., the Plaintiff in this case.
On May 25, 1999, Defendant, Daly, filed a claim for arbitration with the American Arbitration Association against the Plaintiff in accordance with the provisions of Section 7.7 of the SRA. Plaintiff denies that it is a party to the SRA and therefore denies that it is obligated to arbitrate Daly's claim. Plaintiff also claims that the SRA was void ab initio because allegedly the company would have been unable to pay departing shareholders the amounts set forth in Section 2.4 of the agreement without impairing its capital.
Plaintiff filed the instant Declaratory Judgment Action on June 10, 1999 seeking a declaration from the Court that it was not a party to the SRA and was not obligated to resolve Daly's claim by arbitration. Plaintiff also moved for injunctive relief staying arbitration while the Court considered the issues raised in the complaint.
Defendant, Daly filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted on the ground that the issue in dispute was subject to binding arbitration.
Defendant contended that the American Arbitration Association should determine whether the dispute was arbitrable. In the alternative, Defendant sought a stay of further action in this case to permit the matter to be arbitrated in accordance with the SRA.
Plaintiff's request for injunctive relief and Defendant's motion to dismiss were heard in the Superior Court on August 23, 2000. Another Justice of this Court granted Defendant's motion to stay proceedings in the civil action and denied both Plaintiff's motion for a temporary restraining order/preliminary injunction and Defendant's motion to dismiss. The trial justice referred the matter to arbitration without prejudice to Plaintiff's right to seek a judicial determination of the issue of arbitrability following receipt of the arbitrators' award.
The arbitrators determined that the matter was arbitrable and awarded Defendant $1,904,145.00, plus interest accruing at 12% per annum from January 1, 2000.
Defendant filed a motion to lift the stay to enable him to confirm the arbitrators' award. The motion to lift the stay was granted following hearing on July 30, 2001.
Defendant seeks summary judgment as to Plaintiff's claims and contends that there are no genuine issues as to material facts and that judgment should enter on behalf of Defendant as a matter of law. Defendant then seeks to confirm the arbitrators' award.
Plaintiff objects to Defendant's motions. Plaintiff contends that the Court should have determined the issue of arbitrability, not the arbitrators. Plaintiff argues that it is not bound by the arbitration clause contained in the SRA. Plaintiff also asserts that the SRA was void ab initio because payment to Daly thereunder would have resulted in impairment of corporate capital. Plaintiff urges the Court to consider evidence of corporate impairment de novo since it allegedly relates to the threshold question of arbitrability.
In the alternative, Plaintiff moves to vacate the award on the grounds that the arbitrators impermissibly admitted evidence of settlement negotiations and because the award was based upon erroneous, abusive and irrational findings of fact and law.
 ISSUES
Whether a clearly written and expressed agreement to arbitrate exists between the parties. Whether the SRA and its arbitration provision survived the dissolution of Sourcing and bound Plaintiff to arbitrate a dispute with Defendant, who was terminated before Plaintiff corporation was formed. Whether the arbitration award should be vacated either because the arbitrators improperly rejected Plaintiff's corporate impairment defense or because they considered legally immaterial evidence.
 STANDARD OF REVIEW
The Court will first address Defendant's motion for summary judgment on the issue of whether the dispute was arbitrable. Summary judgment is a drastic remedy that should be sparingly granted only when the pleadings, affidavits, and discovery materials demonstrate no genuine issue of material fact exists. Superior Boiler Works, Inc. v. R.J. Sanders, Inc.,711 A.2d 628, 631 (R.I. 1998) (citations omitted); R.I. Super. R. Civ. P. 56(c). The trial justice should "draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility." Id. However, the nonmoving party has an affirmative duty to set forth specifically all facts demonstrating a genuine issue of material fact. Sisters of Mercy of Providence, Inc. v. Wilkie, 668 A.2d 650, 652 (R.I. 1996) (citation omitted). As such, the nonmoving party may not rest upon "allegations or denials in the pleadings, mere conclusions, or mere legal opinions" to create a genuine issue of fact. Rhode Island DEPCO v. Rignanese, 714 A.2d 1190, 1193 (R.I. 1998) (citations omitted). After reviewing the evidence in the light most favorable to the nonmoving party, the trial justice may grant a summary judgment motion if there are no genuine issues of material fact, and the moving party's claim warrants judgment as a matter of law. Harritos v. Cambio, 683 A.2d 359, 360 (R.I. 1996) (citations omitted); R.I. Super. R. Civ. P. 56(c).
 ARBITRABILITY
The arbitrators determined that the dispute was arbitrable. Plaintiff argues that they erred in considering the issue because it was a question for the Court to determine. Defendant disagrees, but acknowledges that the Court should review the issue of arbitrability de novo.
The Court finds that it is the proper function of the Court, not the arbitrators, to determine whether a dispute is arbitrable. AT T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418 (1986); John Wiley Sons, Inc. v. Livingston,376 U.S. 543, 547, 84 S.Ct. 909, 913 (1964); Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 277 (7th Cir. 1992). The question for the Court is "strictly confined" to whether the parties agreed to submit their particular dispute to arbitration. AT T Technologies, Inc., 475 U.S. at 654, 106 S.Ct. at 1421 (Brennan, J., concurring). Under the doctrine of severability, the Court must "focus solely on the arbitration clause and determine whether there is an agreement to arbitrate the underlying dispute." Flender Corp., 953 F.2d at 277; Prima Paint Corp. v. Flood 
Conklin, 388 U.S. 395, 87 S.Ct. 1801 (1967). "If the court determines that the underlying dispute is within the ambit of the arbitration agreement, resolution of that dispute is for the arbitrator[s]." Id. This principle applies even when the underlying dispute involves the validity of the entire contract. Flender Corp., 953 F.2d at 277.
If the parties present the issue of arbitrability to the arbitrators, their decision on that issue is subject to de novo review by the Court. Whereas, judicial review of an arbitration award is confined to enumerated grounds, the question of whether a dispute is arbitrable constitutes a question of law and is decided de novo by the Court. Providence Teachers' Union Local 958 American Federation of Teachers v. Providence School Committee, 433 A.2d 202, 205 (R.I. 1981). See also, John Wiley Sons, Inc. v. Livingston, 376 U.S. at 547.
R.I. Gen. Laws 10-3-2 mandates that agreements to arbitrate be "clearly written and expressed." "[N]o one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so." Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc., 697 A.2d 323, 326 (R.I. 1997). Arbitration is a matter of contract, and in deciding the issue of arbitrability, the Court must determine whether the parties have agreed to submit their dispute to arbitration rather than adjudication. Id.
Based on the SRA, Defendant Daly and Plaintiff's predecessor in interest, Sourcing, consented to resolve "any dispute" thereunder by means of arbitration. Plaintiff argues that the SRA did not survive the transfer of the assets and liabilities of Sourcing to Plaintiff, and thus, Defendant's right to demand arbitration ended with the dissolution of Sourcing.
The dissolution of a corporate party to an agreement to arbitrate does not necessarily void the arbitration clause in an agreement. See, Mass. Ann. Laws ch. 156, 46 A(4) (2001). Plaintiff, as successor to Sourcing's assets and liabilities, may be required to arbitrate the agreement with Daly. See, John Wiley Sons, Inc., 376 U.S. at 547. Plaintiff contends, however, that the SRA, by its provisions terminated upon the dissolution of the company. (SRA, Sec. 7.1(a)(1)).
Defendant relies upon section 7.2 of the SRA which provides in pertinent part that, "This Agreement shall be binding upon the heirs, executors and administrators of the Shareholders, upon the successor or successors of the Corporation and upon the authorized assigns of all the parties." If the agreement is binding on the successors of the corporation, it would follow that the parties anticipated that the SRA would survive the transfer of assets and liabilities to a successor entity, such as Plaintiff.
At first blush, sections 7.1(a)(1) and 7.2 may appear inconsistent with one another on the issue of whether the provisions of the arbitration clause bind the successor company with respect to the Defendant's claim. A contract must be considered in its entirety, and the Court must give the contract its plain, ordinary, and usual meaning. Johnson v. Western National Life Insurance Co., 641 A.2d 47 (R.I. 1994). If an ambiguity exists, the Court resolves the ambiguity by considering the construction placed upon the terms of the agreement by the parties thereto. Id. However, the Court may not resolve an ambiguity in a contract on summary judgment. Rubery v. Downing Corp., 760 A.2d 945 (R.I. 2000).
Whether or not an ambiguity exists between sections 7.1(a)(1) and 7.2 is not pertinent to the resolution of the arbitrability of Defendant's claim. Defendant is not arguing that the SRA governs the relationship between Plaintiff, Window Concepts, Inc. and its shareholders. He does not contend that the SRA survives the dissolution of Sourcing to obligate those associated with the successor company in their dealings with one another. Such argument might fail under section 7.1(a)(1) or might be subject to question in light of section 7.2.
Defendant argues instead that Sourcing's obligations to him under the SRA accrued when he was terminated. It is undisputed that the SRA was in full force and effect when Defendant was terminated. When Plaintiff purchased the assets and obligations of the company, it assumed Sourcing's obligations to Defendant under the SRA. See, Mass. Ann. Laws ch. 156, 46 A(4) (2001). The Court need not resolve any ambiguity between sections 7.1(a)(1) and 7.2 in order to determine the effectiveness of the SRA with respect to claims that arose prior to the date of dissolution. To find otherwise would encourage parties to an agreement to avoid their express and unequivocal obligations thereunder by reorganizing and dissolving upon receipt of a valid claim.
Plaintiff argues in the alternative that the SRA is void ab initio because enforcement of the redemption terms under the agreement was and is beyond the financial capability of both Sourcing and Plaintiff. Plaintiff argues that a corporation is prohibited from using its funds or property to purchase its own shares of capital stock if to do so would cause an impairment of capital to the corporation and prejudice creditors. Goldberg v. Peltier, 66 A.2d 107, 108, 75 R.I. 314 (1949); Anderson v. Moore, Inc., 6 Mass. App. Ct. 386, 391 (1978). Plaintiff claims that the issue of corporate impairment is a defense to arbitrability that should have been resolved by the Court before the commencement of arbitration proceedings. Plaintiff relies on Chastain v. The Robinson-Humphrey Co. Inc., 957 F.2d 851 (11th Cir. 1992) for the proposition that if a contract never existed at all, then the parties thereto may not be compelled to arbitrate.
However, the facts in Chastain are distinguishable from the case at bar. In Chastain, the party contesting arbitration claimed that she never entered into the arbitration agreement and that her signatures thereon had been forged. The Eleventh Circuit noted that under normal circumstances, "an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." However, the Court held that, where a party alleged with substantial evidence that a contract never existed at all, a trial was required to determine whether or not the parties entered into a valid arbitration agreement. In the instant case, Plaintiff is not contesting the validity of the signatures on the SRA. It is undisputed that Sourcing did enter into the SRA with Daly. In Chastain, the Court could not compel arbitration without conducting a trial because the agreement itself was facially defective. In the instant matter, the arbitration agreement is not facially defective.
Under Rhode Island law, the Court will hold a trial to determine arbitrability only in specific instances. R.I. Gen. Laws 10-3-5 provides that, "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the arbitration agreement is in issue, the court shall proceed summarily to the trial thereof." In Bjartmarz v. Pinnacle Real Estate Tax Service, 771 A.2d 124 (R.I. 2001), the Supreme Court interpreted 10-3-5 to apply to claims for fraud in the inducement specifically pertaining to the acceptance of an arbitration provision in a contract. When a party claims fraud in the inducement in the acceptance of an arbitration provision, itself, such a matter is appropriate for adjudication by the Court. However, where the fraud in the inducement is directed generally at the contract, the matter is still referable to arbitration. Bjartmarz, 771 A.2d at 127. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353-3354 (1985), citing, Moses H. Cone Memorial Hospital, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942 (1983). Plaintiff has not alleged fraud in the inducement of the arbitration provision itself.
The Court finds that the issue of corporate impairment does not affect the arbitrability of the dispute. See, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920 (1995) (distinguishing the issue of arbitrability from the merits of the dispute). Impairment of corporate capital is a defense available to a Defendant after the Plaintiff has rested. Goldberg v. Peltier, 75 R.I. 314, 315, 66 A.2d 107 (1949). The arbitrators correctly considered the issue of corporate impairment as a 10 defense to the merits of the dispute. Accordingly, the Court will not consider evidence on this issue de novo.
The parties to the SRA agreed to resolve their dispute before an arbitration panel. Section 7.7 specifically provides that "[a]ny dispute hereunder shall be determined by submitting such matter to arbitration. . ." (SRA, Sec. 7.7). "Any dispute" is broad language manifesting the parties' intent to have all disputes resolved by arbitration. Hornbeck Offshore Corp. v. Coastal Carriers Corp., 981 F.2d 752, 755 (5th Cir. 1993). "Absent allegations of fraud in the inducement of the arbitration clause itself, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the party's claims." Id.; See also, Bjartmarz v. Pinnacle Real Estate Tax Service, 771 A.2d 124, 127 (R.I. 2001). The Court concludes that in light of Section 7.7's broad language, the parties intended to arbitrate the instant dispute.
 MOTION TO VACATE
The parties have stipulated that Rhode Island law governs the scope of judicial review of the arbitration award. Under Rhode Island, an arbitration award is subject to a narrow scope of review. Aetna Casualty Surety Co. v. Grabbert, 590 A.2d 88, 92 (R.I. 1991); Taylor v. Delta Electro Power, Inc., 741 A.2d 265, 266 (R.I. 1999). The Court will uphold the factual determinations of arbitrators absent a finding that the decision is "irrational' or `manifestly disregards the applicable contract provisions' . . ., or if it falls within one of the four statutorily prescribed grounds in 10-3-12." Aetna Casualty Surety Co., 590 A.2d at 92. Those four grounds for vacating awards are:
(1) Where the award was procured by corruption, fraud or undue means.
(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. R.I. Gen. Laws 10-3-12.
Plaintiff argues that the arbitration panel should have applied Rhode Island law to the issue of corporate impairment. Plaintiff concedes however that the Court must give deference to the panel's decision on choice of law. Under the clear terms of the SRA, the agreement was to be construed under Massachusetts law. The arbitrators did not exceed their authority in applying Massachusetts law to the defense of corporate impairment.
Plaintiff next argues that the arbitration panel misapplied Massachusetts law regarding the defense of impairment of corporate capital. Specifically, Plaintiff contends that the panel's reliance upon Scriggins v. Thomas Dalby Co., 290 Mass. 414, 195 N.E. 749 (1935) resulted in a "nonsensical" award. According to Plaintiff, Scriggins is "internally inconsistent" and "schizophreni[c]." The Court disagrees. The arbitrators did not exceed their authority in relying upon this case. It has never been overturned and remains good law.
The arbitrators considered Plaintiff's factual defense that redeeming Defendant's stock would leave the corporation unable to satisfy its debts. (Award of Arbitrators, July 26, 2001, at 4-7). Plaintiff argues that such finding was based upon erroneous and irrational application of law and facts.
The arbitrators' award specifically addresses the issue of corporate impairment. As set forth in their decision, the arbitrators found that Plaintiff could satisfy Defendant's claims without becoming insolvent. They concluded that, under Massachusetts law, the defense fails if Plaintiff was solvent on the maturity date of the obligation and on the date Defendant's action was commenced. The arbitrators determined that Plaintiff and its predecessor company, Sourcing, were solvent from the date Defendant was terminated until the date he demanded arbitration.
The SRA provided that Sourcing could redeem the shares of a terminated shareholder by paying him in twenty equal quarterly installments. Sec. 2.4(d)(ii). The arbitrators found that Plaintiff would have been able to make quarterly payments to the Defendant without impairing its ability to pay its creditors. They cite evidence that in 1998, Plaintiff had sufficient funds to loan Mazza $1,500,000.00 to buy a house and furnishings. They inferred that Plaintiff would not have made this loan, and its auditors would not have approved it, if such loan would have rendered Plaintiff insolvent. The Court gives great deference to these factual findings of the arbitration panel.
The arbitrators did not exceed their authority in rejecting Plaintiff's defense of corporate impairment. Such decision was neither irrational nor did it manifestly disregard applicable contract provisions. It was not the product of fraud. The decision is upheld on the issue of corporate impairment.
Finally, Plaintiff argues that the arbitration panel relied on inadmissible evidence in determining that Daly was terminated both as an employee and as an officer of the corporation. Had he been terminated only as an employee, and not as an officer, Daly would not be entitled to redeem his shares under the SRA. Plaintiff contends that the arbitrators considered evidence of settlement negotiations in violation of both Massachusetts common law and Rhode Island Rules of Evidence 408.
Plaintiff contends that the admission of evidence of settlement negotiations at the arbitration proceeding constituted legally immaterial evidence which substantially prejudiced its rights in violation of R.I. Gen. Laws 10-3-12(3). Plaintiff directs the Court to paragraph 8 of the Arbitrators' Award.
Paragraph 8 refers to Defendant's several demands for redemption including a formal written notice dated August 31, 1995. Paragraph 8 also references Exhibit 18, a letter from Mazza to Daly dated August 25, 1995. In that letter, Mazza reiterated his position that the company was unable to pay shareholders under the terms of the SRA. The letter does not refer to negotiations or offers of settlement. It is not evident from reading the award that the panel relied on evidence of settlement negotiations in reaching their final determination.
Even if the panel relied on evidence of settlement negotiations, such reliance would not justify vacating the award. Rule 408 provides in pertinent part:
 Rule 408. Compromise and offers to compromise. — Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose . . . R.I. R. Evid. 408.
Rule 408 does not suggest that evidence of compromise and offers to settle have no probative value. The rule merely excludes such evidence at trial to avoid frustrating and impeding settlement negotiations. See, Gagner v. Strekouras, 423 A.2d 1168, 1169 (R.I. 1980). The rationale behind Rule 408 is clear. If offers of settlement could be used against a party to prove liability or damages, litigants would refuse to discuss settlement.
Evidence of settlement negotiations may be inadmissible although not necessarily immaterial. "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." McCormick On Evidence, 773 (4th Ed. 1992). R.I. Gen. Laws 10-3-12(3) addresses legally immaterial evidence that has substantially prejudiced the rights of a party. The statute is clear. It does not invite the Superior Court to revisit arbitrators' evidentiary rulings to determine whether inadmissible evidence was allowed. Instead, the statute permits the Court to review only the admission of legally immaterial evidence that substantially prejudiced the rights of a party.
An arbitration panel's evidentiary rulings are not normally reviewable by the Superior Court. Concerned Minority Educators of Worcester v. School Committee of Worcester, 392 Mass. 184, 188, 466 N.E.2d 114, 117 (1984). Arbitrators are not bound by the rules of evidence. Belanger v. Matteson, 346 A.2d 124, 137 (R.I. 1975); Bernhardt v. Polygraphic Company of America, Inc., 350 U.S. 198, 204, 76 S.Ct. 273, 277 (1956). "Arbitrators are free to determine the facts before them without having their award become subject to judicial revision." Romano v. Allstate Insurance Co., 458 A.2d 339, 341 (R.I. 1983).
Paragraph 8 does not reveal that the arbitrators even relied upon evidence of settlement negotiations in finding that Daly was terminated as an employee and as an officer. Even if they did rely upon such evidence, it would not justify vacating the arbitrators' award because evidence of settlement negotiations does not constitute the admission of legally immaterial evidence as contemplated by the statute.
 CONCLUSION
For the foregoing reasons, Defendant's motion for summary judgment is granted. Plaintiff's motion to vacate is denied. The arbitration award is confirmed.
Counsel shall submit an order and judgment for entry by the Court.