GREATER NEW YORK CARPET HOUSE, INC., Respondent, *v.*
FLORENCE HERSCHMANN, Also Known as FLORA HERSCHMANN,
as Executrix, etc., of EMIL M. HERSCHMANN, Deceased, Appellant.

First Department, February 16, 1940.

*R. E. Burdick* of counsel [*M. S. & I. S. Isaacs,* attorneys], for the appellant.

*Robert Aronstein,* for the respondent.

CALLAHAN, J. The complaint alleges, in substance, that the plaintiff is a domestic corporation; that defendant is executrix of the estate of Emil M. Herschmann, deceased; that on September 30,

1932, an agreement was made between defendant's testator, one Milton Goldstein and the plaintiff, a copy of which agreement is attached to the complaint. Said agreement provides that on the death of either of said individuals (who were the sole stockholders of the corporation), the corporation would purchase and the stockholder or his personal representatives would sell his respective holdings (250 shares) of the corporate stock for the sum of $25,000.

The complaint further alleges that two policies of life insurance in the sums of $25,000 each had been procured upon the lives of the respective stockholders, payable to the corporation. On the death of either insured, the proceeds of the policy issued on the stockholder's life were to be placed in a special surplus account with which to purchase his stock. Both stockholders agreed that they would not sell their stock to any person until they first offered same to the corporation.

There were additional provisions in the contract whereby the stockholders agreed to make wills directing their executors to sell their stock, and providing that the wives of the stockholders were to bind themselves to convey any interest which they might receive in the stock of their husbands. The agreement, however, was not signed by the wives of the stockholders. The contract bore the seals of the individual signatories.

The complaint alleges the death of Emil Herschmann; that plaintiff had received the $25,000 payable under the policy issued on his life and had placed same in a special surplus account; that defendant has in her possession the stock of her testator; that plaintiff tendered the $25,000 to the defendant and demanded delivery of the stock, but the defendant refused to comply with the terms of the agreement. Plaintiff seeks specific performance of the agreement.

Defendant contends that the complaint is insufficient in that the contract was unenforcible, owing to lack of consideration. Her theory is that the contract is one which might require the plaintiff to purchase its own stock out of capital rather than out of surplus. She contends that the sole consideration for the contract in suit was the mutual promises of the corporation to buy and of defendant's testator to sell the stock involved; that the promise to purchase was not binding upon plaintiff corporation for the reason that it could not legally perform the contract if it had no surplus, and that, therefore, there were no adequate considerations for the agreement.

Plaintiff, on the other hand, contends that there was sufficient legal consideration for the contract, and that the remedy of defendant, if she claims that it would be illegal at present for the corporation to pay for the stock because of lack of surplus, would be to plead such facts as a defense to this action.

We think that there was a sufficient legal consideration to support the contract. The present agreement was much more than a simple contract for the purchase and sale of stock. It was an attempt by two stockholders who owned all the stock of a corporation to arrange a method whereby the surviving stockholder would acquire complete corporate control. The provision that the corporation would purchase the survivor's stock was merely the means to an end. The agreement, in order to create a fund with which to pay for the stock, provided that the company take out life insurance policies on the lives of both stockholders, payable to the corporation; that the proceeds of these policies were to be set apart as a special surplus account to furnish the purchase price of the stock. While not expressly recited in the contract, we think that it is necessarily to be inferred from its terms that the corporation bargained to pay the premiums for the said insurance, and the facts recited in the complaint indicate that the corporation did in fact pay said premiums between the date of the agreement in 1932 and the death of defendant's testator several years thereafter. This constituted a detriment to the corporation.

For the reasons stated, any claim that despite the arrangement whereby a special surplus account was created to pay for the stock, because of the existence of other debts, there was no corporate surplus sufficient to pay the full purchase price of the stock, would, in our opinion, constitute a defense to the present action.

Defendant relies on the decision in *Topken, Loring & Schwartz, Inc.,* v. *Schwartz* (249 N. Y. 206) to support her claim that the complaint was insufficient because the contract lacked legal consideration.

We find that the contract now before us is distinguishable from that considered in *Topken, Loring & Schwartz, Inc.,* v. *Schwartz* (*supra*), for the reason that here, as noted, there was consideration other than the mutual promises to buy and sell the stock. In the *Topken* case (*supra*) it was stated (at p. 211): " If in the case before us the defendant had been given employment and the employment had furnished the price or the consideration for his agreement to return the stock at the end of his employment, we would then have a contract resting not on a mutuality of promises, but upon a consideration given and paid in part by the corporation. [*Hoover Steel Ball Co.* v. *Schaefer Ball Bearing Co.*, 90 N. J. Eq. 164, last paragraph, p. 171; vol. 1, Williston on Contracts, sec. 13; *Strait* v. *Northwestern Steel & Iron Works*, 148 Wis. 254.] The contract then would be good unless it appeared that the stock would be purchased out of capital. This would be a matter of defense." ·

In the present transaction we find a consideration given and paid in part by the corporation, to wit: The maintenance of the

insurance policies. In addition, we have the other mutual promises heretofore recited. As these matters express actual consideration, we need not determine whether consideration would be presumed from the fact that the contract bore the seals of the signatories other than the plaintiff.

It has been stated that the principle enunciated in the *Topken* case (*supra*) rested on the reasoning that the corporation's promise was illusory because the existence of a surplus was within the corporation's control. (See 1 Williston on Contracts [Rev. ed.], § 133.) No such control would exist when, as in the present case, the corporation was required to hold in a special surplus account the money supplied for the purchase of the stock. Therefore, the present case is not one where the plaintiff had a choice to buy or not, as it pleased.

Under the law of New York, a corporation has the right to purchase its own stock, but the purchase must be made out of surplus, and cannot be made out of capital. The provisions of our Penal Law (§ 664) are that " A director of a stock corporation, who concurs in any vote or act of the directors of such corporation, or any of them, by which it is intended  *  *  * 5. To apply any portion of the funds of such corporation, except surplus, directly or indirectly, to the purchase of shares of its own stock  *  *  *  Is guilty of a misdemeanor." It is plain that no violation of this section could have been contemplated here for no illegal intention, as defined in the statute, could have been present when an arrangement was made whereby a special fund was being created with which the stock was to be purchased. The rights of general creditors of the corporation could not have been prejudiced by making this agreement, for this would be no impairment of capital because of said agreement. Even assuming that at the time of the performance of the contract, because the rights of general creditors might have become impaired meanwhile, the contract became impossible of performance, we think that the contract was legal when made, and that it may be enforced, unless the defendant shows the present impossibility of performance.

The order should be affirmed, with twenty dollars costs and disbursements, with leave to the defendant to answer within twenty days after service of order with notice of entry thereof, on payment of said costs.

MARTIN, P. J., O'MALLEY, TOWNLEY and COHN, JJ., concur.

Order unanimously affirmed, with twenty dollars costs and disbursements, with leave to the defendant to answer within twenty days after service of order upon payment of said costs.