ANTON SANKO, Respondent, v IRA MARK et al., Appellants, et al., Defendants. [859 NYS2d 83]—

Order and judgment (one paper), Supreme Court, New York County (Marylin G. Diamond, J.), entered June 29, 2007, which, to the extent appealed from, as limited by the briefs, granted plaintiff's motion for summary judgment on his cause of action for partition, unanimously reversed, on the law, with costs, the motion denied, and the matter remanded for further proceedings consistent herewith.

Plaintiff, defendants Ira Mark, Mark Family Realty LLC, Selrob Family Limited Partnership, Selina Henry and Robert Henry own the property located at 801-803 Greenwich Street in Manhattan as tenants-in-common. When plaintiff purchased his undivided one-third interest, in November 1991, his cotenants were the late Phyllis Mark, mother of defendant Ira Mark (and holder of a one-third interest), and Selina and Robert Henry (collectively, holders of a one-third interest). On or about March 17, 1992, the tenants-in-common entered into an agreement that, inter alia, entitled each to occupy and exercise control over a certain portion of the premises, provided each with a "right of first refusal" with respect to the sale of any other cotenant's undivided one-third share and occupied space, and was by its terms applicable to successors and assigns. The issue on appeal is whether the right of first refusal contained in the parties' agreement violates that branch of the rule against perpetuities that prohibits remote vesting (EPTL 9-1.1 [b]). We hold that it does not.

As an initial matter, we reject plaintiff's contention that this

appeal should be dismissed as taken from an interlocutory judgment that does not bring up for review prior orders. To the contrary, the appeal from the judgment ordering partition of the property necessarily brings up for review the order in which the court held that the right of first refusal was void as violative of the rule against remote vesting and therefore did not bar plaintiff's action for partition (*see Lowinger v Lowinger*, 287 AD2d 39 [2001], *lv denied* 98 NY2d 605 [2002]; *Delcor Labs. v Cosmair, Inc.*, 169 AD2d 639 [1991], *lv dismissed* 78 NY2d 952 [1991]).

The rule against perpetuities arose out of the "natural antagonism between society's interest in promoting the free and ready transfer of property and the desire of property owners to control the future disposition of their holdings" (*Metropolitan Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156, 160-161 [1986]). However, in certain contemporary settings, principally commercial ones, application of the rule would contravene its very purpose of "ensur[ing] the productive use and development of property by its current beneficial owners" (*id.* at 161, 166). One such setting is that of condominium ownership; "because the management of condominium developments has a valid interest not only in securing the occupancy of the units but also in protecting the ownership of the common areas and the underlying fee, its preemptive rights to repurchase units before sale to third parties should be excepted from the operation of the rule" (*id.* at 165; *see Anderson v 50 E. 72nd St. Condominium*, 119 AD2d 73 [1986], *appeal dismissed* 69 NY2d 743 [1987]; *Goodstein v Goodstein Bros. & Co.*, 204 AD2d 231 [1994], *lv dismissed* 85 NY2d 924 [1995]).

The property at issue here is used for commercial purposes, the tenants-in-common deriving rents from both commercial and residential leases of the majority of the units. It was used for commercial purposes when plaintiff acquired his one-third interest, in 1991; indeed, the mortgage given by plaintiff to his predecessor-in-interest notes, "Premises are improved as commercial property." Moreover, while not a condominium or cooperative association, it is effectively operated as one, with the tenants-in-common controlling their respective occupied spaces and sharing control over the common areas. The preemptive right provided for in the parties' agreement encourages productive use of the property by giving the tenants-in-common an incentive to develop their occupied spaces as well as the common areas, as the value of the fee and the buildings erected thereon would as a whole be enhanced. Indeed, it is evident from the provisions affording the right of first refusal and

imposing certain restrictions on transfers of the interests of the tenants-in-common that the entire agreement was designed to foster development of the premises and to ensure that it remained in the hands of the co-investors or their relations. "[A]lthough preemptive rights offend the basic policy of the rule against remote vesting, the offense is properly offset by their utility in modern legal transactions and that usefulness justifies excepting them from the operation of the rule" (*Bruken*, 67 NY2d at 164-165).

While excepted from operation of the rule against remote vesting, however, the right of first refusal is subject to analysis under the common-law rule against unreasonable restraints on alienation (*id.* at 161, 167, 168). We find that the requirement that a tenant-in-common desiring to sell first offer his share and occupied space to the remaining parties, on the same terms and conditions as are contained in any bona fide third-party offer, and that the remaining parties have 30 days to match such offer, is reasonable (*see id.* at 167; *Anderson*, 119 AD2d at 79).

Partition, the remedy sought by plaintiff, is incompatible with the right of first refusal, at least for such time (30 days) as plaintiff's cotenants have in which to exercise that right (*see Tramontano v Catalano*, 23 AD2d 894 [1965]). Concur—Andrias, J.P., Gonzalez, Moskowitz and DeGrasse, JJ.