DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARY CATHERINE MARSHALL,**
Appellant/Cross-Appellee,

v.

**KEVIN MACWILLIAM,** Administrator Ad Litem of the
**ESTATE OF JOHN L. ZOLTAK,**
Appellee/Cross-Appellant,

**JOHN P. ZOLTAK, MARGARET MARY ZOLTAK,** and
**SUPPORT SYSTEMS ASSOCIATES, INC.,**
Appellees.

No. 4D2022-1571

[July 17, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 312017CA000319.

Rebecca Mercier Vargas and Stephanie L. Serafin of Kreusler-Walsh, Vargas & Serafin, P.A., West Palm Beach, and Lewis W. Murphy, Jr. of Murphy & Walker, P.L., Vero Beach, and Dane R. Ullian of Gould Cooksey Fennell, PLLC, Vero Beach, for appellant/cross-appellee.

Roy D. Wasson of Wasson & Associates, Chartered, Miami, and Clifford M. Miller of Miller Law Offices, Vero Beach, for appellee/cross-appellant Kevin MacWilliam, Administrator Ad Litem of the Estate of John L. Zoltak.

John A. Turner of Saul Ewing LLP, West Palm Beach, for appellee John P. Zoltak.

Thomas W. Tierney and Lihua Chen of Rossway Swan Tierney Barry & Oliver, P.L., Vero Beach, for appellee Margaret Mary Zoltak.

Alan B. Rose and Gregory S. Weiss of Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., West Palm Beach, for appellee Support Systems Associates, Inc.

FORST, J.

In adjudicating the instant appeal, "[w]e consider the parameters of a doctrine that has been 'long cherished by law school professors and dreaded by most law students: the infamous rule against perpetuities.'" *Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass'n One, Inc.*, 986 So. 2d 1279, 1280 (Fla. 2008) (quoting *Byke Constr. Co. v. Miller*, 680 P.2d 193, 194 (Ariz. Ct. App. 1984)). The rule is the Loch Ness Monster of the law—feared, yet rarely encountered (and the alleged sightings are open to dispute).

Here, we address whether a mandatory stock redemption agreement between shareholders in a closely held corporation is prohibited by New York's rule against perpetuities ("the RAP"). Upon close examination of the laws and judicial opinions of the State of New York, we conclude that the RAP does not apply to prohibit agreements between the shareholders of a closely held corporation requiring the corporation to redeem a shareholder's shares upon the shareholder's death. Accordingly, on this issue, we reverse the trial court's entry of summary judgment in favor of appellee, the Administrator Ad Litem ("the Administrator") of the deceased shareholder's estate ("the Estate"), and against appellant, Mary Catherine Marshall.[1]

Additionally, we affirm the trial court's earlier order denying the Administrator's motion to dismiss and for summary judgment, and thus summarily affirm on all issues raised in the Administrator's cross-appeal.

## Background

This dispute concerns a privately owned and closely held corporation, Support Systems Associates, Inc. ("SSAI") and its shareholders: John L. Zoltak—Marshall's father ("Decedent"); John P. Zoltak—Marshall's brother; Margaret Mary Zoltak—Marshall's mother; and Marshall. All four shareholders and SSAI entered into a shareholder agreement, governed under New York law.

The shareholder agreement specifies that no sale or transfer of stock is valid unless in compliance with the agreement. The agreement also provides that shareholders may transfer stock during their lives only if they first offer the shares to the other parties to the agreement.[2] In this

---

[1] The order that is the focus of this appeal granted partial summary judgment. Other issues raised in the complaint and counterclaim remain pending.

[2] "None of the stockholders of the Corporation shall make any Transfer of Stock unless he shall have first offered all of his shares of stock to the Corporation and

2

regard, SSAI and the shareholders have an option to purchase shares that are up for sale. The shareholder agreement further states that the shareholders agree not to transfer, sell, or convey their shares without the prior written consent of the parties to the agreement or where transfer is expressly required by the agreement.

Paragraph five is the locus of the dispute. Paragraph five contains a mandatory stock redemption provision in the event of the death of a shareholder:

> 5. Redemption of Shares
>
> *In the event that the death of a stockholder occurs, all of a stockholder's right, title and interest in the shares of stock of the Corporation owned by him shall be transferred to the Corporation* by a redemption of such shares which redemption shall occur on such date as may be agreed upon by the Corporation and the stockholder whose shares are being redeemed, but in no event more than 120 days after the occurance [sic] of any of such events. On the redemption date, the stockholder shall deliver the certificates representing the shares owned by him, duly endorsed and the corporation shall pay to the stockholder the purchase price or so much of it as then becomes payable, which purchase price shall be determined as hereinafter provided. The events referred to above are as follows:
>
> > A. The death of a stockholder, in which event the term stockholder as used in this Paragraph 5 . . . shall include his duly appointed legal representative and the 120 day period shall commence on the date of such representative's appointment.

(Emphasis added).

A subsequent paragraph requires shareholders to incorporate the provisions of the shareholder agreement into their wills, "directing and authorizing [their] executor[s] to fulfill and comply with the provisions hereof and to sell and transfer his shares in accordance therewith."

---

to the individual stockholder of the Corporation, in the manner and to the extent hereinafter set forth . . . . In the event any stock has been offered or reoffered for sale . . . any stock which has not been finally accepted may be sold or disposed of in any manner within sixty days . . . ."

Prior to his death, Decedent did not incorporate the shareholder agreement's provisions into his will. Instead, he created a living trust that devised all of his voting common stock in SSAI to Marshall's brother, and created a will that devised his residuary estate to the trust. Decedent's will and trust were made under Florida law.

After Decedent died in 2014, Marshall sought a declaratory judgment to determine the ownership of Decedent's voting shares in SSAI, among other requested relief. Marshall alleged that SSAI was required to redeem Decedent's shares under the mandatory stock redemption provision in paragraph five of the shareholder agreement.

Marshall moved for summary judgment on this issue. She argued the shareholder agreement compelled Decedent's estate to transfer Decedent's shares to SSAI for redemption. The estate administrator's response and cross-motion for summary judgment argued the mandatory stock redemption provision violates the RAP because a transfer of shares may vest in a shareholder born after a then-existing shareholder's life in being plus twenty-one years, and Decedent's will should control the disposition of his shares.

The trial court agreed with the administrator, entering final summary judgment in the estate's favor on this issue, and holding that the mandatory stock redemption provision violated the RAP "and was invalid from its inception." Upon finding the agreement void, the trial court ordered "SSAI shares being held by [the Administrator] . . . shall be disposed of pursuant to the probated Will of [Decedent]." This appeal follows.

## Analysis

The question before us is whether the trial court correctly determined that New York's RAP rendered paragraph five of the shareholder agreement void. This query requires us to determine whether New York's RAP applies to a mandatory stock redemption provision.

The standard of review for a trial court's entry of summary judgment is de novo. *City of Delray Beach v. DeLeonibus*, 379 So. 3d 1177, 1180 (Fla. 4th DCA 2024). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Constr. Consulting, Inc. v. Dist. Bd. of Trs. of Broward Coll.*, 347 So. 3d 14, 21–22 (Fla. 4th DCA 2022) (quoting Fla. R. Civ. P.

4

1.510(a)).  A trial court's interpretation of a contract is reviewed de novo. *Fla. Inv. Grp. 100, LLC v. Lafont,* 271 So. 3d 1, 4 (Fla. 4th DCA 2019).

We begin by defining the RAP under New York law and applying it to paragraph five of the shareholder agreement.

The parties agreed that the shareholder agreement would be interpreted and enforced under New York law.  And "[s]ince, under Florida's choice-of-law rules, the 'laws of the jurisdiction where [a] contract was executed govern interpretation of the substantive issues regarding the contract,' . . . interpretation of the Agreement is governed by [New York] law." *Blechman v. Est. of Blechman,* 160 So. 3d 152, 157–58 (Fla. 4th DCA 2015) (second alteration in original) (quoting *Lumbermens Mut. Cas. Co. v. August,* 530 So. 2d 293, 295 (Fla. 1988)).

The RAP, or as referred to in New York, the rule against remote vesting, "originated in the late 17th century to address donative transfers of land among family members.  By curbing attempts by the landed gentry to control future generations' ownership of their real property, the rule protected the public's interest in the development of land and prevented undue concentrations of wealth and power." *Wildenstein & Co. v. Wallis,* 595 N.E.2d 828, 832 (N.Y. 1992).  The RAP thus "struck a balance in allowing property owners to provide for family members they personally knew and those within the first generation after that class." *Id.* at 833. The RAP was intended to "limit control of title to real property by the dead hand of landowners reaching into future generations." *Symphony Space, Inc. v. Pergola Props., Inc.,* 669 N.E.2d 799, 803 (N.Y. 1996).

New York's RAP states:

>      (a)(1) The absolute power of alienation is suspended when there are no persons in being by whom an absolute fee or estate in possession can be conveyed or transferred.

>      (2) Every present or future estate shall be void in its creation which shall suspend the absolute power of alienation by any limitation or condition for a longer period than lives in being at the creation of the estate and a term of not more than twenty-one years. . . .

>      (b) No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved.

5

N.Y. Est. Powers & Trusts Law § 9-1.1 (McKinney 1967); *see Symphony Space*, 669 N.E.2d at 803 (per the RAP, "[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest").

New York's RAP's subsection 2 has been described as "a rigid formula that invalidates any interest that may not vest within the prescribed time period." *Wildenstein*, 595 N.E.2d at 831. New York does not apply a "wait and see" approach to determine whether a perpetuities violation occurs. *Symphony Space*, 669 N.E.2d at 808 ("That is, an interest is void from the outset if it *may* vest too remotely . . . .").

We conclude that New York's RAP does not apply to paragraph five of this shareholder agreement. First, New York's RAP generally does not apply to corporations because, by their very nature, they exist in perpetuity, which is antithetical to the purpose of the RAP. "Business corporations are creatures of statute." *Cmty. Bd. 7 of Borough of Manhattan v. Schaffer*, 639 N.E.2d 1, 4 (N.Y. 1994). Corporations, unless otherwise specified, are of perpetual duration. N.Y. Bus. Corp. Law § 402(a)(9) (McKinney 2023).

In authorizing the creation of the corporate structure, New York permits corporations to exist beyond the lives of their original shareholders. Evidenced by its statutes and caselaw, New York has removed corporations from the ancient constraints of the RAP.

> The great and essential object to be attained by the creation of a corporation, is *continuity* [sometimes called *immortality*] and *individuality*; "properties," says Ch. J. Marshall, "by which a perpetual *succession* of many persons are considered as the same, and may act *as the single individual*. They enable a corporation to manage its own affairs, and to hold property without the perplexing intricacies, the hazardous and endless necessity of perpetual conveyances for the purpose of transmitting it from hand to hand."

*Thomas v. Dakin*, 22 Wend. 9, 100 (N.Y. Sup. Ct. 1839) (quoting *Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. (4 Wheat.) 518, 636 (1819)).

New York and federal courts have consistently upheld stock redemption agreements as valid and enforceable, applying the common law rule against unreasonable restraints and not the RAP to them. *See Allen v. Biltmore Tissue Corp.*, 141 N.E.2d 812, 815 (N.Y. 1957) ("[T]he tendency

is . . . to sustain a restriction imposed on the transfer of stock if 'reasonable' and if the stockholder acquired such stock with requisite notice of the restriction.").

Generally, "courts must enforce shareholder agreements according to their terms." *In re Dissolution of Penepent Corp.*, 750 N.E.2d 47, 50 (N.Y. 2001). "Such agreements avoid costly, lengthy litigation and promote 'reliance, predictability and definitiveness' in relationships among shareholders in close corporations." *Id.* (citation omitted) (quoting *Gallagher v. Lambert*, 549 N.E.2d 136, 138 (N.Y. 1989)).

"It is well settled that absent fraud, duress, or undue influence, agreements between shareholders which call for the purchase and sale of stock [held] by a shareholder who dies are valid and binding." *In re Gusman*, 577 N.Y.S.2d 664, 666 (N.Y. App. Div. 1991) (citations omitted); *accord Ferolito v. Vultaggio*, 911 N.Y.S.2d 323, 324–25 (N.Y. App. Div. 2010); *In re Cetta*, 733 N.Y.S.2d 521, 522 (N.Y. App. Div. 2001); *Isaacson v. Beau Label Corp.*, 461 N.Y.S.2d 420, 420–21 (N.Y. App. Div. 1983).

The common law rule against unreasonable restraints serves the same general purpose as the RAP, "by limiting the power of an owner to create uncertain future estates." *Metro. Transp. Auth. v. Bruken Realty Corp.*, 492 N.E.2d 379, 381 (N.Y. 1986). "[I]n certain contemporary settings, principally commercial ones, application of the [RAP] would contravene its very purpose of 'ensur[ing] the productive use and development of property by its current beneficial owners.'" *Sanko v. Mark*, 859 N.Y.S.2d 83, 85 (N.Y. App. Div. 2008) (third alteration in original) (quoting *id.*). The rule against unreasonable restraints, however, is more flexible than the RAP, "forbidding owners to impose conditions on conveyances which block the grantee from freely disposing of the property." *Id.* Courts consider "the reasonableness of the restraint . . . depending upon its purpose, duration and, where applicable, the designated method for fixing the purchase price." *Id.*

Applying the common law rule against unreasonable restraints, New York and federal courts have consistently upheld stock redemption agreements as reasonable restraints on the alienation of property. A "buyout provision is not an unreasonable restraint on alienation of property, nor is it unconscionable." *Verderber v. Commander Enters. Centereach, LLC*, 925 N.Y.S.2d 142, 144 (N.Y. App. Div. 2011); *accord Rosiny v. Schmidt*, 587 N.Y.S.2d 929, 930–31 (N.Y. App. Div. 1992); *Ferolito*, 911 N.Y.S.2d at 324 ("A restraint on the transferability of stock will be upheld if it is reasonable, in accordance with public policy, and effectuates a lawful purpose." (citations omitted)); *Greater N.Y. Carpet*

*House v. Herschmann*, 17 N.Y.S.2d 483, 486 (N.Y. App. Div. 1940) ("Under the Law of New York, a corporation has the right to purchase its own stock . . . ."); *Neville, Rodie and Shaw, Inc. v. LeGard*, No. 23-cv-266, 2024 WL 656517, at *6–*7 (D. Conn. Feb. 16, 2024) (applying New York law); *Benson v. RMJ Sec. Corp.*, 683 F.Supp. 359, 371 (S.D.N.Y. 1988) (same).

"Such restrictions are considered to be reasonable because they do not represent an 'effective *prohibition* against transferability' (citation omitted), but merely limit the group to whom the shares may be transferred." *Gusman*, 577 N.Y.S.2d at 666 (quoting *Allen*, 141 N.E.2d at 816). A mandatory stock redemption agreement does not amount to an "'annihilation of property', but is simply an agreement by which the shareholders of a closely-held corporation agreed among themselves to dispose of the shares of a deceased shareholder. Therefore, the agreement is valid and enforceable." *Id.* (quoting *Allen*, 141 N.E.2d at 816).

The administrator has not referenced any cases in which New York courts have held a shareholder agreement void because conveyances created therein may vest outside the perpetuities period. This reinforces our determination that the common law rule against unreasonable restraints applies to stock redemption agreements, not the RAP. *See Gusman*, 577 N.Y.S. 2d at 666.

**Conclusion**

The trial court erred in granting the administrator's motion for summary judgment. The trial court incorrectly held the shareholder agreement's mandatory stock redemption provision void based on New York's RAP. Therefore, we vacate the trial court's entry of partial final summary judgment in the estate's favor and remand for further proceedings to determine the proper disposition of Decedent's shares in SSAI.

*Reversed and remanded for further proceedings consistent with this opinion.*

KLINGENSMITH, C.J., and CIKLIN, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

8